**Michael VELOS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 87–256.**

Supreme Court of Wyoming.

March 30, 1988.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender,

Julie D. Naylor, Appellate Counsel, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Shirley Kingston, Asst. Atty. Gen., Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

Appellant Michael Velos was convicted of first degree sexual assault, a violation of § 6-2-302(a)(i), W.S.1977 (June 1983 Replacement). He raises the following issue:

"Whether or not the trial court erred in granting the State's Motion in Limine."

We affirm.

Appellant and a group of friends got together on July 21, 1987, to have a party. In addition to appellant, the group consisted of Tom Hutchinson, Shaun Guillams, Eric Vredenburg, Lenny Eubanks and the victim. The group assembled first at the Coast-to-Coast store in Sheridan, but later settled on Hutchinson's sister's apartment as the venue for the party. When they arrived at the apartment someone set up a drinking game called "quarters."

The victim was a seventeen year-old high school senior at the time of the assault. She was a friend of both Hutchinson and appellant. She had driven to Sheridan from Gillette to be at the party after having worked until 4:00 a.m. on July 21. She also testified that on the night of the party she had not eaten much. Her first encounter with appellant occurred early that evening. She was in one of the bedrooms of the apartment looking out a window when appellant came up behind her. He pressed himself against her and she turned around and kissed him. He then lifted up her shirt, looked at her breasts and touched her. They both heard footsteps coming toward the room and stopped what they were doing.

The victim then went into a small room off the bathroom and had a wine cooler. Her testimony was that she drank between two and three wine coolers and some gulps of beer that evening. Shortly after her last wine cooler, she became ill and vomitted. She stopped drinking and two of the boys at the party found a mattress and laid it down for her in the bedroom. She laid down on it and went to sleep. The bedroom was closed so she could sleep.

Eventually, the party started to break up as some younger participants decided to go home. Soon only appellant, Vredenburg, Guillams and Hutchinson remained. The foursome decided to go to Perkins restaurant for some food. Hutchinson woke the victim briefly to see if she wanted to go along, but she declined. The four boys left the kitchen light and one hall light on as they left, locking the door behind them. When they arrived at the restaurant parking lot they met some friends, including Steve Laughery. They all talked for a few minutes and then appellant stated that he was tired and had to work the next day. He got into his car and left.

There were conflicting versions of what appellant did after he left the restaurant parking lot. The victim testified, however, that when she woke up in the apartment there was a man on top of her kissing and touching her body. The man spoke to her and she recognized the voice as appellant's. The victim screamed for Hutchinson, but he was not in the apartment. Appellant then rolled the victim to her stomach and tried to pull her pants down. She struggled and he punched her in the head three times. She stopped struggling and screamed again. Appellant put his hands around her neck and tried to choke her. She told him she would stop screaming and he told her "Shut up, bitch, or I'll kill you." Appellant pulled the victim's pants off and pulled her panties down halfway. He tried to tie her wrists together with a towel, but was unsuccessful. Then appellant pulled the victim's panties off completely.

Appellant next asked the victim if she was a virgin. She said she was not but later told him she was. Appellant tried to enter her anally and then vaginally. Appellant next performed oral sex on her. After some verbal taunting he tried to penetrate the victim vaginally. He was not able to penetrate her completely. About

this time appellant and the victim heard Hutchinson, Vredenburg, Guillams and Laughery pull up outside. Appellant got up and ran out of the room. The victim testified that by that time she had seen appellant's face once and recognized it.

When the four boys pulled up outside, Hutchinson and Guillams, who were in the same vehicle, noticed that appellant's car was parked outside and that all of the lights were off in the apartment. Hutchinson and Laughery went into the front of the building, but before they got inside they heard the back screen door slam. They ran to the back door while Guillams went up the front stairs. When they all got into the apartment they found the victim huddled in the bedroom, leaning against the wall crying. She told them appellant had tried to rape her. Hutchinson then took her to the police station where she was interviewed.

Meanwhile, Laughery found appellant outside headed towards his car. Laughery walked up behind appellant and asked him, "Why did you do it?" Appellant did not answer the question directly. The two talked briefly before Guillams arrived. Appellant testified that he spoke with Guillams about what was happening and at one point told Guillams, "I think I screwed up, man."

The police arrived shortly thereafter accompanied by Hutchinson. They read appellant his rights and took him to the police station for questioning. They also searched the apartment finding a towel ripped into strips by the kitchen and by the mattress. A pair of woman's panties were found in the bedroom.

At the police station, appellant was questioned but refused to make a statement until he spoke with an attorney. The police

arrested and booked him that night. He was searched and placed in a cell for the evening. The next day the court appointed defense counsel. Three days after his arrest a search warrant was issued and the police did various tests for evidence on appellant.

Appellant waived his preliminary hearing. An information was filed in district court on August 19, 1987, and he was arraigned on that same day. Trial by jury was set for September 14 through 16, 1987.

The matter came to trial before a jury on the scheduled dates and the jury found appellant guilty of sexual assault in the first degree. After a presentence investigation, appellant was sentenced to eight to fifteen years in the state penitentiary. The sentence was later amended to run concurrently with a burglary sentence appellant had been serving by probation at the time of the rape. This appeal followed.

The sole issue in this case originates from a motion in limine filed by the state on September 10, 1987. The motion asked that the defense be barred

" * * * from attempting to elicit evidence concerning prior sexual conduct of the victim not involving the Defendant, particularly testimony concerning a conversation had between the Defendant and the victim several hours prior to the alleged sexual assault regarding the victim having performed oral sex upon another individual at a previous party. * * * "

The state based the motion on three grounds including: (1) that defense counsel had not made an offer of proof in writing that it intended to use evidence of the victim's past sexual conduct at trial under § 6–2–312(a), W.S.1977 (June 1983 Replacement);[1] (2) that the evidence was irrele-

---

1. The statute provides in pertinent part:

    "(a) In any prosecution under W.S. 6–2–302 through 6–2–305 or for any lesser included offense, if evidence of the prior sexual conduct of the victim, reputation evidence or opinion evidence as to the character of the victim is to be offered the following procedure shall be used:

    "(i) A written motion shall be made by the defendant to the court at least ten (10) days prior to the trial stating that the defense has

    an offer of proof of the relevancy of evidence of the sexual conduct of the victim and its relevancy to the defense;

    "(ii) The written motion shall be accompanied by affidavits in which the offer of proof is stated;

    "(iii) If the court finds the offer of proof sufficient, the court shall order a hearing in chambers, and at the hearing allow the questioning of the victim regarding the offer of

vant under the defendant's theory of the case; and, (3) that if the evidence was somehow relevant it was unduly prejudicial. The trial court heard arguments on the motion in chambers before trial. At that time the defense argued that evidence that the victim had discussed performing fellatio on another individual at another time was relevant and necessary to its case for several reasons. It was argued that such testimony could show that appellant's version of the touching and kissing between appellant and the victim earlier in the evening was more accurate, and hence, his entire explanation of the rape more credible. The defense also argued that the prosecution would be able to elicit sympathy from the jury because all they would know about the victim otherwise was that she was a virgin. In this argument, defense counsel suggested there was a difference between a "[V]irgin in the technical sense, the classical sense, * * *" and a woman who had experienced a different sexual encounter. After argument the trial court granted the motion and proceeded with the trial.

Appellant now argues that even though the defense did not comply with § 6–2–312(a), he should have been able to question the victim about her earlier conversation. He argues that the purpose of the statute is to put the prosecution on notice of what the defense is planning to prove in trial, and that the state had such notice in this case.

The purpose of § 6–2–312(a) is to allow the trial court to see a written motion and affidavits so it can decide whether a hearing is necessary. The trial court can then hold the hearing, hear from the victim, and decide on the motion. The statute means what it says and should be complied with. See *Stogner v. State*, Wyo., 674 P.2d 1298, 1300 (1984).

■ In this case the trial court held a hearing, despite appellant's noncompliance with § 6–2–312(a), before granting the motion. Consequently, the next question before us is whether the trial court abused its discretion when it granted the state's motion in limine. We have stated that:

"Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. [Citation.]" *Martin v. State*, Wyo., 720 P.2d 894, 897 (1986).

We will not upset a trial court's discretionary ruling on the admissibility of evidence unless the appellant carries his burden to show a clear abuse of that discretion. *Amin v. State*, Wyo., 695 P.2d 1021, 1027 (1985).

■ The trial court appears to have granted the state's motion in limine because evidence of the victim's alleged past oral sexual behavior was irrelevant under Rule 401, Wyoming Rules of Evidence.[2] We agree and affirm that ruling. Appellant's theory of the case stressed mistaken identity. He did not defend on the basis of consent. The evidence excluded under the state's motion had nothing to do with the identity of the rapist.

■ Further, if appellant's aim in eliciting such testimony from the victim was to attack her credibility, it was not proper under Rule 608(b), W.R.E.,[3] as we con-

proof made by the defendant and other pertinent evidence;

"(iv) At the conclusion of the hearing, if the court finds that the probative value of the evidence substantially outweighs the probability that its admission will create prejudice, the evidence shall be admissible pursuant to this section. The court may make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted."

**2.** Rule 401, Wyoming Rules of Evidence, provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**3.** Rule 608(b), W.R.E., provides:

"(b) *Specific instances of conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of

 

strued that rule in *Weddle v. State*, Wyo., 621 P.2d 231, 238 (1980). The trial court did not abuse its discretion when it granted the state's motion in limine.

Affirmed.

truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against selfincrimination when examined with respect to matters which relate only to credibility."