Argued and submitted July 3, reversed and remanded October 16, 2002, petition for review denied February 4, 2003 (335 Or 195)

In the Matter of the Adoption of
Jessica Cassandra Moran and
Shania Linn Moran, Minor Children.

Daniel Marvin MORAN,
*Appellant,*

*v.*

Paul WELDON
and Diane Weldon,
*Respondents.*

0100008A; A116453

57 P3d 898

William H. Howell argued the cause and filed the brief for appellant.

Teunis J. Wyers argued the cause for respondents. With him on the brief was Wyers & Haskell, P. C.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Father appeals from a judgment granting respondents' petition to adopt his children without his consent. He argues that ORS 109.322, which provides for an adoption without a parent's consent if the parent is imprisoned under a sentence of not less than three years and has actually served three years, is unconstitutional on several grounds. We do not reach the constitutional issues but construe the statute to require proof of a basis for terminating father's parental rights in addition to the fact of his imprisonment. We therefore reverse.

The children were born to father and his wife in 1993 and 1996. Respondents are the brother and sister-in-law of the children's mother. They have played major roles in raising the children beginning shortly after their births and, since April 1998, have been the children's guardians and have had physical custody of them. In February 1998, father began serving a sentence of more than three years' imprisonment on a conviction of felon in possession of a firearm. When respondents sought to be appointed the guardians of his children, father consented. In March 2001, after father had actually served three years of his sentence, respondents filed this petition to adopt the children. The children's mother consented to the adoption. Father refused to consent, and respondents relied on ORS 109.322 as the sole basis for dispensing with his consent. After a hearing, the court found that the adoption was in the best interests of the children and granted the petition.

The only issues that father raises on appeal concern the constitutionality of ORS 109.322; he does not attack the court's findings or conclusions concerning what will best promote the welfare of the children. The relevant portions of ORS 109.322 provide:[1]

"If either parent * * * is imprisoned in a state or federal prison under a sentence for a term of not less than three years and has actually served three years, there shall be

---

[1] The omitted portions of the statute refer to parents who have been adjudged mentally ill or mentally deficient.

served upon such parent, if the parent has not consented in writing to the adoption, a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. * * * Upon hearing being had, if the court finds that the welfare of the child will be best promoted through the adoption of the child, the consent of the * * * imprisoned parent is not required, and the court shall have authority to proceed regardless of the objection of such parent. This section does not apply where consent is given in loco parentis under ORS 109.316 or 109.318."

As the trial court construed ORS 109.322, proof that a parent has been imprisoned for three years is itself a ground for adoption. The court did not believe that it is necessary to prove any of the criteria in ORS 419B.502 to 419B.508 for terminating parental rights or otherwise to show that the parent has done anything that placed the child at a risk of harm, that demonstrated an inability to be an adequate parent, or that constituted parental misconduct. The trial court's interpretation of ORS 109.322 is not unreasonable if only the text of the statute is considered.

■     Father argues that ORS 109.322, as interpreted by the trial court, violates Article I, sections 20 and 25, of the Oregon Constitution and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. His argument under Article I, section 25, is that the adoption works a corruption of blood. He did not make that argument in the trial court, and, whatever its merits may be, they are not sufficiently obvious to justify our reviewing the issue as error apparent on the face of the record. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991). His arguments under Article I, section 20, and the Equal Protection Clause rely heavily on the existence of a fundamental right to his parental relationship with the children. For those reasons, we will focus our discussion on his arguments under the federal Due Process Clause rather than following our usual practice of analyzing his state claims first. Because we construe the statute in a way that both avoids due process problems and gives father the result that he seeks, we do not need to resolve the remaining constitutional issues.

In *Wilson and Wilson*, 184 Or App 212, 55 P3d 1106 (2002), and *O'Donnell-Lamont and Lamont*, 184 Or App

249, 56 P3d 929 (2002), we held, relying on *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000), that parents have a fundamental right under the Due Process Clause to " 'make decisions concerning the care, custody and control of their children.' " *Wilson*, 184 Or App at 217 (*citing Troxel*, 530 US at 66). After analyzing several relevant Oregon cases, we held that that fundamental right prevents a court from awarding custody of a child to a nonbiological parent rather than a biological parent simply because it believes that the award is in the best interests of the child. Rather, the court must first find that the biological parent could not or would not provide adequate love and care for the child or that the child would suffer undue physical or psychological harm in the biological parent's custody. *O'Donnell-Lamont* at 256. The issue in this case is whether ORS 109.322, properly construed, is consistent with the fundamental right identified in *Troxel*. We begin with the relevant Oregon cases.

In *Simons et ux v. Smith*, 229 Or 277, 366 P2d 875 (1961), the children's mother, who was the custodial parent, and her new husband sought to have the new husband adopt the children of her former marriage. The issue on appeal was whether ORS 109.314 could be enforced literally to terminate the parental rights of a divorced father without proof of disabilities or faults that would otherwise support the termination of his parental rights. The father exercised his statutory right to appear and object to the adoption. The trial court granted the petition for adoption over the father's objections; it treated the statute as making the consent of the custodial parent sufficient despite those objections. The father appealed.

The Supreme Court first held that the statute was sufficient to give the trial court jurisdiction over the adoption petition. *Simons*, 229 Or at 279. However, it also held that the noncustodial parent's objection prevented the court from ordering the adoption based solely on the statutory ground. It noted that an adoption without the consent of the biological parent has the effect of terminating that parent's rights, an action that "ought to be related to the parent's conduct as a parent." *Id.* at 280. After discussing the legal and practical problems that the trial court's approach entailed, the

Supreme Court reasoned that "[r]eading ORS 109.314 in light of the balance of ORS ch 109, the statute can be made to comply with the demands of due process and with the legislative intent revealed in the adoption code." *Id.* at 285. In order to achieve that goal, the court held that, once the non-custodial parent appears and objects, that objection is binding, "unless by giving attention to the requirements of at least one other statute which sets forth a recognizable and defensible ground for cutting off the natural rights of parents the trial court can properly conclude that the objector has no further rights." *Id.* In essence, the court tied the substantive requirements for an adoption without the parent's consent to the substantive requirements for terminating parental rights.

■■ The reasoning in *Simons* informs how ORS 109.322 should be understood when its text is read in context with other statutes providing for adoption and the termination of parental rights. Under ORS 109.322, the court has jurisdiction to grant an adoption if the parent has been incarcerated for three years. *See also Michels v. Hodges*, 326 Or 538, 546, 956 P2d 184 (1998) (grounds for termination of parental rights in ORS chapter 419B do not provide jurisdiction for adoption petition; rather, the criteria for adoption in ORS 109.312 to 109.329 must be satisfied). Meeting the jurisdictional prerequisites under ORS 109.322, however, does not in itself provide sufficient grounds to order an adoption when a parent refuses to consent. Rather, as *Simons* holds, there must be also some "recognizable and defensible ground for cutting off the natural rights of parents[.]" 229 Or at 285. Moreover, incarceration by itself is not such a "recognizable and defensible ground." In *State ex rel SOSCF v. Stillman*, 333 Or 135, 36 P3d 490 (2001), the Supreme Court held that a father's incarceration was not sufficient in itself to justify terminating his parental rights. Rather, the termination of parental rights requires the court to conclude from the evidence that, at the time of its decision, the incarceration is seriously detrimental to the child. *Id.* at 148-49.

■ The analysis in *Simons* is consistent with the rule that we derived from *Troxel* and the related Oregon cases for granting custody to a nonbiological parent. Under that rule, there must be proof that the biological parent cannot or will

not provide adequate love and care for the child or that the child will be at an undue risk of harm in the parent's custody. Although we developed that rule in the context of a custody determination, the same considerations apply at least as strongly when the issue is a nonconsensual adoption. Termination is the greatest possible deprivation of the fundamental right to be a parent. To order an adoption solely on the ground of the parent's incarceration, without proof that the incarceration makes the parent incapable of providing love and care for the child or that it causes undue harm to the child, would raise serious constitutional issues. As did the Supreme Court in *Simons* with regard to ORS 109.314, we can avoid those issues by construing ORS 109.322 as requiring the court to find proof of some additional statutory ground for terminating parental rights before it may consider whether the welfare of the child will be best promoted through the adoption.[2]

ORS 109.322 provides that the incarcerated parent may show cause why the adoption should not occur. As the court held in *Simon* regarding ORS 109.314, if the imprisoned parent objects, the court continues to have jurisdiction to proceed. But the objection to the adoption must be sustained unless the petitioners for adoption carry their burden to demonstrate that the parent has lost his or her parental rights based on other statutory grounds for adoption or termination of parental rights that exist in addition to the incarceration requirement of the statute. As the Supreme Court emphasized in *Simons*, the best interests of the child (or, as ORS 109.322 phrases it, what will best promote the welfare of the child) is an issue that arises only after the court first finds that the parent has acted in a way that would justify adoption without the parent's consent. 229 Or at 280-81, 285.[3] Under that construction, we give effect to the procedures that the statute prescribes without permitting the termination of a parent's rights in the absence of evidence that

---

[2] According to the record, father was due to be released in March 2002. Any further proceeding on the petition for adoption should, of course, be based on the situation as it exists at the time. *See Stillman*, 333 Or at 148-49.

[3] In *Simons*, the Supreme Court included ORS 109.322 in its list of provisions, other than ORS 109.314, that dispensed with a parent's consent because the parent was under a disability or was in some way at fault. 229 Or at 279 n 1. Since then, it has become clear that incarceration by itself is an insufficient ground to terminate

would otherwise support that action, thereby protecting a parent's fundamental constitutional right while preserving the statutory scheme that the legislature created.[4]

Because the trial court did not consider the issues that we have held to be essential to an adoption under ORS 109.322, we reverse the judgment of adoption.

Reversed and remanded.

---

parental rights. As a result, the specific reference to ORS 109.322 in *Simons* no longer applies, but the court's underlying analysis in that case does.

[4] In *Stursa v. Kyle*, 99 Or App 236, 782 P2d 158 (1989), and *F. v. C.*, 24 Or App 601, 547 P2d 175, *rev den* (1976), we considered other constitutional challenges to ORS 109.322. Neither case involved the issue that we consider here or gave us an occasion to consider the proper construction of the statute in light of that issue.