Argued and submitted July 30, 2003, reversed and remanded February 4, 2004

In the Matter of the Adoption of
McKenzie Ray Naylor, a Minor Child.

Raquel Cheree DANIEL,
*Appellant,*

*v.*

Michael Troy NAYLOR
and Dana Kiyomi Naylor,
*Respondents.*

40-01-00848; A118568

84 P3d 819

Marc Friedman argued the cause and filed the briefs for appellant.

George W. Kelly argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Wollheim* and Schuman, Judges.

EDMONDS, P. J.

---

* Wollheim, J., *vice* Kistler, J., resigned.

## EDMONDS, P. J.

Raquel Daniel, the birth mother of McKenzie Ray Naylor, appeals from a judgment of the trial court granting the petition for adoption of McKenzie brought by Michael Naylor, McKenzie's birth father, and his wife, Dana Naylor. The judgment provides for the termination of mother's parental rights pursuant to ORS 109.322. She argues that the trial court lacked subject matter jurisdiction, erred in granting the adoption over her objection pursuant to ORS 109.322, and failed to determine whether McKenzie's welfare would be best promoted through the adoption. We reverse and remand.

After mother was convicted of assault in the first degree and assault in the second degree in December 1997, she began serving her sentences on those convictions. McKenzie was born on April 7, 1998, and was removed from mother's custody one week later. Father and Dana filed a petition for adoption of McKenzie on January 16, 2001. Pursuant to their petition, the trial court issued an order to mother requiring her to show cause why her consent to the adoption should not be dispensed with as the result of her incarceration in a state correctional facility. Mother is scheduled for release from prison in May 2005. A hearing was held in November 2001, and thereafter the trial court entered an order providing that the adoption could proceed without the consent of mother pursuant to ORS 109.322. The court entered a judgment of adoption in June 2002, granting the adoption and terminating mother's parental rights. She appeals from that judgment.

■ We first consider mother's jurisdictional argument and respondents' argument that we should not consider it because she makes the argument for the first time on appeal. Mother concedes that she is raising the argument for the first time on appeal but asserts that that fact cannot defeat her argument because of its jurisdictional nature. She relies on *Waddill v. Anchor Hocking, Inc.,* 330 Or 376, 384, 8 P3d 200 (2000), *adh'd to on recons,* 331 Or 595, 18 P3d 1096 (2001), in support of her argument. We agree that, if a subject matter

jurisdictional defect exists, it may be raised for the first time on appeal and need not be preserved under ORAP 5.45.

Specifically, mother argues that the judgment granting adoption in this case is a legal nullity because the court granted the adoption without her consent and because the error of the court is jurisdictional in nature.

Adoption was unknown at common law. *Furgeson v. Jones*, 17 Or 204, 209, 20 P 842 (1888). It exists as the result of legislation. As the Supreme Court indicated in *Michels v. Hodges*, 326 Or 538, 544, 956 P2d 184 (1998):

> "The adoption statute, ORS 109.312, requires the written consent of both biological parents to the adoption, '[e]xcept as provided in ORS 109.314 to 109.329.' ORS 109.314 to 109.329 list six exceptions to the consent requirement. * * * In summary, the text states that consent of the biological parents, or a statutory substitute for that consent, is the jurisdictional foundation on which the adoption statute is based."[1]

(Brackets in original.) The plain language of ORS 109.322, the statutory substitute for consent on which father and his wife relied in this case, indicates that proof of the statute's incarceration requirement is insufficient to dispense with a parent's consent to the adoption. *See* ORS 109.322.[2] Instead,

---

[1] *See also Furgeson v. Jones*, 17 Or 216, 218-19, 20 P 842 (1889) (reasoning that "consent lies at the foundation of statutes of adoption, and when it is required to be given and submitted to the court, the court cannot take jurisdiction of the subject-matter without it" and "[i]t is thus apparent that if the parents are living and do not belong to the excepted classes, that their consent must be obtained and is a pre-requisite to jurisdiction; that without such consent jurisdiction does not attach, and the court is without authority to act and make a decree of adoption, and if it undertakes to do so, its decree will be a nullity, not voidable but void, and may be collaterally assailed in any action"); *Small v. Andrews*, 20 Or App 6, 8, 530 P2d 540 (1975) (reasoning that consent is a jurisdictional prerequisite to the entry of any adoption decree and that any action taken without the necessary consent is void).

[2] ORS 109.322 provides, in relevant part,

"If either parent * * * is imprisoned in a state or federal prison under a sentence for a term of not less than three years and has actually served three years, there shall be served upon such parent, if the parent has not consented in writing to the adoption, a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. * * * Upon hearing being had, if the court finds that the welfare of the child will be best promoted through the adoption of the child, the consent of the * * * imprisoned parent is not required, and the court shall have authority to proceed regardless of the objection of such parent."

proof that the incarceration requirement has been satisfied merely gives the court jurisdiction to proceed to determine whether the other requirements of the statute have been satisfied. *Moran v. Weldon*, 184 Or App 269, 275, 57 P3d 898 (2002), *rev den*, 335 Or 195 (2003).

■■ As we held in *Moran*, ORS 109.322 requires that a petitioner to an adoption demonstrate that (1) the parent is imprisoned under a sentence for a term of not less than three years and has actually served three years; (2) a ground for termination of parental rights exists in addition to the fact of the parent's imprisonment; and (3) if a ground for the termination of parental rights exists, the welfare of the child will be best promoted through the adoption. If those three requirements are satisfied, the court may grant the adoption without the parent's consent. In other words, if those requirements are satisfied, a statutory substitute for consent exists. If those three requirements are not satisfied, however, the parent must consent to the adoption. *Moran*, at 274-75. Because consent or a statutory substitute for consent is the jurisdictional foundation of the adoption statute, *Michels*, 326 Or at 544, a parent may assert for the first time on appeal that the requirements of a statutory substitute for consent have not been satisfied. Accordingly, we conclude that mother's threshold argument is correct: She can raise for the first time on appeal the question of whether the requirements of ORS 109.322 have been met.

■ Mother argues that the trial court lacked jurisdiction under the statute because the petition was filed less than three years from the date of the birth of the child and because the trial court relied solely on her incarcerated status without requiring proof that she cannot or will not provide adequate love and care for the child or that the child will be at an undue risk of harm in her custody. Mother is correct that the trial court considered only the fact that she was incarcerated in ruling that her consent was not required. After the trial court rendered its judgment in this case, we decided *Moran*. In that case, we held that the trial court was required to find some additional statutory ground for the termination of parental rights, as well as fulfillment of the three-year imprisonment requirement of ORS 109.322 before it could grant an adoption in the absence of the incarcerated parent's

consent. Consequently, we remanded in that case for further consideration by the trial court of any evidence of additional grounds. Our holding in *Moran* applies to this case.

Remand in this case, however, could be unnecessary if mother's interpretation of ORS 109.322 is correct. She contends that the facts are uncontroverted that, when the petition was filed in January 2001, less than three years of her incarceration had elapsed from McKenzie's birth in April 1998. Accordingly, she asserts, the trial court was without jurisdiction.

The goal of statutory interpretation is to ascertain the intention of the legislature, and, at the first level of analysis, we examine the text and the context of the statute. ORS 109.322 is unambiguous. On its face, the statute imposes three jurisdictional requisites, all of which must be satisfied at the time of the filing of the petition for adoption. The first sentence of the statute refers to a "parent." The ordinary understanding of the word includes a person who "begets or brings forth offspring." *Webster's Third New Int'l Dictionary* 1641 (unabridged ed 1993). In addition, the statute requires that, at the time of filing, the parent be imprisoned under a sentence of more than three years and that the parent has actually served not less than three years of that sentence.

■       Here, mother became a parent when the child was born on April 7, 1998. Mother is correct that the petition for adoption filed in January 2001 was filed less than three years after the date of the child's birth. However, the statute does not provide that the three-year period is triggered by the birth of the child. Rather, it requires only that the parent "has actually served three years" of imprisonment at the time that a citation issues to show cause why the adoption of the child should not be decreed. Thus, the statute focuses on the date of the filing of the petition for adoption, looks retrospectively, and asks whether, at that time, the parent has been incarcerated for at least three years. Mother's argument would appear to require that the child be at least three years old before the petition for adoption can be filed. The legislature could have imposed such a requirement, but it did not;

we are not authorized to insert into the statute what the legislature has omitted. ORS 174.010.

■     Respondents argue, on the other hand, that, under our *de novo* standard of review, the evidence "more than meet[s] the requirements set by *Moran.*" We disagree that the record is adequate for our review in that regard. As we have said previously, the requirements of the statute are jurisdictional in nature. It would not be prudent for us to decide a jurisdictional issue *de novo* on the record when the parties have not had the opportunity to develop the evidentiary record on that issue in the trial court. Consequently, this case must be reversed and remanded in light of *Moran.* *See* 184 Or App at 276.

Reversed and remanded.