2010 WY 1

**Scott Raymond BUDIG, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0038.

Supreme Court of Wyoming.

Jan. 4, 2010.

Representing Appellant: Harry G. Bondi of Harry G. Bondi Law Offices, P.C., Casper, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] In this appeal, Scott Raymond Budig (the appellant) challenges his conviction for third-degree sexual assault and second-degree sexual abuse of a minor. The appellant asserts that his constitutionally protected right to confrontation was violated and that the prosecutor improperly vouched for the credibility of the victim witnesses. Finding no error, we will affirm.

## ISSUES

[¶ 2] 1. Whether the district court abridged the appellant's right to confrontation when it limited the scope of his cross-examination of the victims?

2. Whether the prosecutor unfairly vouched for the credibility of the victims during closing argument?

## FACTS

[¶ 3] On February 21, 2008, the appellant was arrested and charged with five counts of third-degree sexual assault on one of his stepdaughters (older sister), and one count of second-degree sexual abuse of a minor on his other stepdaughter (younger sister). The appellant pled not guilty and received a jury trial.

[¶ 4] At the trial, the appellant advanced the theory that his stepdaughters had fabricated their allegations. To support his theory, the appellant moved the district court for permission to admit evidence of, among other things, the girls' prior sexual conduct, their manipulative character traits, and their propensity for "meanness." The district court heard the appellant's motion and determined that only evidence directly related to the girls' relationship with the appellant was admissible, and evidence of other instances of specific conduct not directly related to the appellant was not admissible to prove the girls' general character. The district court also held that evidence of the girls' past sexual conduct was not admissible.

[¶ 5] The matter proceeded to trial. The evidence presented included the testimony of an expert witness who described common misconceptions about the behaviors and reactions of victims of sexual abuse.[1] Upon hearing the evidence, the jury convicted the appellant of two counts of third-degree sexual assault and one count of second-degree sexual abuse of a minor. The appellant was sentenced to incarceration for a period of not less than four years nor more than nine years on both of the third-degree sexual assault convictions, to be served concurrently. He was also sentenced to not less than four nor more than nine years for the second-degree sexual abuse of a minor, to be served consecutively to the sentence from the third-degree sexual assault convictions. A timely notice of appeal followed.

## DISCUSSION

[¶ 6] The appellant raises two issues in this appeal. In the first, the appellant claims that his right to confront the witnesses was abridged when the district court prevented him from cross-examining the victims about their past sexual conduct, their manipulative character traits, and their propensity for "meanness." In the second issue, the appellant claims the state committed prosecutorial misconduct by improperly vouching for the credibility of the victims during it's closing

---

1. The appellant moved *in limine* to exclude the testimony of the expert, citing concerns that the expert would vouch for the credibility of the victims. The district court determined that the expert would be permitted to testify but specifically limited his testimony to general characteristics of sexual abuse victims and admonished him to make no comment about the credibility or truthfulness of the victims.

argument. We will address each of the appellant's claims in turn.

### Whether the district court abridged the appellant's right to confrontation when it limited the scope of his cross-examination of the victims?

■ [¶ 7] The constitutional right to confront a witness arises under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Wyoming Constitution.[2] A district court's limitation on a defendant's constitutional right to confrontation is a question of law which we review *de novo*. *Hannon v. State*, 2004 WY 8, ¶ 11, 84 P.3d 320, 328 (Wyo.2004). Restrictions on a defendant's right to confront witnesses are subject to harmless error analysis. *Id*. We have previously addressed the application of the harmless error standard of review to an alleged abridgment of the right to cross-examine a witness as follows:

> [T]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id*. at ¶ 25, 84 P.3d at 332–33 (quoting *Olden v. Kentucky*, 488 U.S. 227, 232–33, 109 S.Ct. 480, 483–84, 102 L.Ed.2d 513 (1988)).

[2] [¶ 8] We recently summarized the limits that a court may properly place upon cross-examination:

The primary right secured by the Confrontation Clause of the United States and Wyoming Constitutions is the right of cross-examination. In order for there to be a violation of the right of confrontation, a defendant must show more than just a denial of the ability to ask specific questions of a particular witness. Rather, a defendant must show that he was prohibited "from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness . . . 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Hannon*, ¶ 18, 84 P.3d at 330 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)). The Confrontation Clause guarantees a defendant an "**opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (*per curiam*) (emphasis in original)). A defendant's right to cross-examination of a witness is not unfettered, but is subject to the trial court's "discretion to reasonably limit cross-examination to prevent, among other things, questioning that is repetitive or of marginal relevance." *Hannon*, ¶ 22, 84 P.3d at 331–32 (quoting *United States v. DeSoto*, 950 F.2d 626, 629–30 (10th Cir. 1991)); *see also Olden v. Kentucky*, 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988) (*per curiam*).

*Miller v. State*, 2006 WY 17, ¶ 8, 127 P.3d 793, 796 (Wyo.2006) (some citations omitted; emphasis in original). Thus, a district court may reasonably limit a defendant's right to cross-examination without abridging his Sixth Amendment right to confrontation. *See Id*. at ¶¶ 7–13, 127 P.3d at 796–97; *Jensen v. State*, 2005 WY 85, ¶¶ 7–13, 116 P.3d

2. Although the appellant cites both the United States and Wyoming Constitutions in his brief, he does not differentiate between the two provisions or otherwise provide separate analysis of the Wyoming constitutional provision in question. We have said that as a matter of policy, we will not consider separate state constitutional analysis unless the party presents proper argument supporting independent state grounds. *Cohen v. State*, 2008 WY 78, ¶ 23, 191 P.3d 956, 962 (Wyo.2008).

1088, 1091–1093 (Wyo.2005); *Schmidt v. State*, 2001 WY 73, ¶ 30, 29 P.3d 76, 85–86 (Wyo.2001).

[¶ 9] Prior to trial, the appellant filed a Motion to Admit Evidence of Alleged Victims wherein he described character evidence he intended to address during cross-examination for the purpose of showing the victims bias or prejudice. The evidence included allegations related to the victims' past sexual conduct, evidence of their lying, their manipulative character traits, and their propensity for meanness. The appellant also requested that he be allowed to cross-examine the older sister regarding a "burn book" and that it be admitted into evidence. This "burn book" was a notebook containing disparaging and strongly-worded statements regarding friends, acquaintances, and schoolmates. The state filed a response and the district court held a hearing. In it's Order on Defendant's Motion to Admit Evidence of Alleged Victims, the district court examined and specifically addressed each category of character evidence the appellant hoped to use. The district court determined that it would allow the appellant to cross-examine the victims regarding evidence of specific acts of untruthfulness or character for truthfulness, evidence of turning on and off their affections toward appellant, and any facts showing meanness or manipulation that were directly related to the appellant. Also, although the district court refused to allow the appellant to offer the entire "burn book" into

evidence, it ruled that the appellant could use one page specifically related to the appellant. The district court, however, refused to permit the appellant to cross-examine the victims about alleged past sexual conduct or other reputation or character evidence not directly related to their interactions with, or attitudes toward, the appellant.

[¶ 10] In this appeal, the appellant contends that the district court erred when it refused to allow him to cross-examine the victims about 1) past sexual conduct, 2) manipulation, and 3) meanness. In sexual assault cases, such as this, the admissibility of this type of evidence is governed by Wyo. Stat. Ann. 6–2–312 (LexisNexis 2009), commonly referred to as the "Rape Shield Law." [3] This statute sets forth a specific procedure the defendant must follow if he intends to offer "evidence of the prior sexual conduct of the victim, reputation evidence or opinion evidence as to the character of the victim." Wyo. Stat. Ann. 6–2–312(a); *Grady v. State*, 2008 WY 144, ¶ 20, 197 P.3d 722, 729 (Wyo.2008). The statute requires the defendant to give notice of intent to use such evidence and make an offer of proof of it's relevancy to the defense, with accompanying affidavits. Wyo. Stat. Ann. 6–2–312(a)(i) and (ii); *Velos v. State*, 752 P.2d 411, 414 (Wyo. 1988). If the district court finds the offer of proof sufficient, it conducts an in-camera hearing to decide the admissibility of the evidence by examining whether the "probative value of the evidence substantially out-

---

3. Wyo. Stat. Ann. § 6–2–312, entitled "Evidence of victim's prior sexual conduct or reputation; procedure for introduction," provides:

(a) In any prosecution under this article or for any lesser included offense, if evidence of the prior sexual conduct of the victim, reputation evidence or opinion evidence as to the character of the victim is to be offered the following procedure shall be used:

(i) A written motion shall be made by the defendant to the court at least ten (10) days prior to the trial stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the victim and it's relevancy to the defense;

(ii) The written motion shall be accompanied by affidavits in which the offer of proof is stated;

(iii) If the court finds the offer of proof sufficient, the court shall order a hearing in chambers, and at the hearing allow the ques-

tioning of the victim regarding the offer of proof made by the defendant and other pertinent evidence;

(iv) At the conclusion of the hearing, if the court finds that the probative value of the evidence substantially outweighs the probability that it's admission will create prejudice, the evidence shall be admissible pursuant to this section. The court may make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted.

(b) This section does not limit the introduction of evidence as to prior sexual conduct of the victim with the actor.

(c) Any motion or affidavit submitted pursuant to this section is privileged information and shall not be released or made available for public use or scrutiny in any manner, including posttrial proceedings.

weighs the probability that it's admission will create prejudice." Wyo. Stat. Ann. 6–2–312(a)(iv); *Velos,* 752 P.2d at 414.

[¶ 11] The appellant's motion, filed pursuant to this statute, set forth the following allegations with respect to the three above-mentioned categories of evidence:

1. Evidence of both girls manipulation of the Budig and [girls' father] families. These girls have threatened the Budig family with threats of returning to California at times when they didn't get their ways. On the other hand, in the summer of 2004 when the girls wanted to stay in Casper, they called their father a "dick". The girls do a variety of actions depending upon where they want to stay. Recently, and may be pertinent to the present case, they referred to [another family] as the perfect family long before they were placed with them.

This evidence is relevant in that it provides the motivation and the intent, among other things, for these girls to make false accusations.

2. Evidence of the girls' meanness. These girls have displayed mean characteristics from time to time. Examples of mean behavior include making fun of a disabled aunt and then lying about it. Upon hearing their father, . . . . being pistol whipped in an armed robbery, that for a long period of time they laughed about it, calling him such things as a "pussy" and stating that if he was a real man like their "dad", [the appellant], it wouldn't have happened to him.

. . . .

4. Evidence of the girls' past sexual conduct. This evidence is relevant in that without some evidence being put forth of these girls' prior sexual knowledge, any fact finder might believe these little girls couldn't possibly know anything about sex unless [the appellant] had done what he is accused of. Instead, the truth of the matter is that [the older sister] has had at least one groping and heavy petting relationship with a boy (her step cousin) a few years older than her, in which she crawled into bed with him on a couple of occasions. [The younger sister] has repeatedly

grabbed a boy in the crotch or kicked him in the crotch. It further appears that these girls set up a "My Space" porn account which they never acknowledged. In a so-called "Burn Book" attached, [the older sister] refers to "fingering" on numerous pages. "Fingering" is the sex act the defendant is accused of doing. In a recording, the girls laugh about there being nothing to do at their house other than "[f——]."

5. In [the older sister]'s Burn Book. This book speaks for itself and the finder of fact should be entitled to determine her character from what is written in that book. It is relevant in that it is an indication of her meanness, her knowledge of sex, her sexual accusations against others, her attitude towards any young girl who might submit to any sex by an older male, as well as a page that shows her attitude toward her step dad.

[¶ 12] The appellant summarizes his argument that the above evidence should have been admitted as follows:

Because the girls were mean to their family members as well as friends and classmates in their burn book, their disregard for people's feelings and reputation was not isolated, but prevalent in all aspects of their lives, and social lives, family lives, and school lives. Therefore, it is likely that the girls would have the motivation to lie about accusing their step-father of sexual assault because they demonstrated a past of not being sensitive to an individual's reputation.

Thus, character evidence of the girls past sexual conduct, manipulation, and meanness are all relevant to proving that the girls may have had a motive to fabricate allegations of sexual assault.

The appellant's position is simply flawed. These allegations, even if true, do virtually nothing to show the victims bias or prejudice against the appellant. Because none of the evidence relates directly to the appellant, it's relevance is marginal and it's probative value, if any, is very limited. Furthermore, to allow the appellant to argue to the jury that the victims made false allegations against the appellant because they had been manipu-

lative or mean to other family members or peers in the past requires a significant leap in logic and has the potential to confuse the issues.

[¶ 13] Finally, we turn to the appellant's contention that the evidence of the victims' past sexual conduct should have been admitted. These allegations regarding the victims' prior sexual knowledge are in the class of evidence the rape shield law is specifically designed to exclude. However, the appellant attempts to avoid application of the rape shield law by arguing that the evidence was merely intended to show that the victims had independent "sexual knowledge," and not to embarrass or prejudice the victims or show that they were more likely consensually to engage in the conduct of which he is accused. The appellant's attempted circumvention of the rape shield law runs counter to the intent and stated purpose of the statute.

Wyoming, along with most other jurisdictions, enacted a "rape-shield" statute to bring under control a long-standing tradition that rape victims could be discredited as witnesses based on prior sexual conduct. This tradition was based on the faulty notion that women who engaged in nonmarital intercourse were immoral and likely to engage in such conduct on any given occasion, and was deemed prejudicial and humiliating to the victim.

*Stogner v. State,* 792 P.2d 1358, 1362 (Wyo. 1990) (citations omitted). We have said that this statute is "designed to protect the *victim* from embarrassment and abuse at trial and also to encourage the reporting of sexual assaults to the authorities. They are not enacted for the protection of the accused." *Heinrich v. State,* 638 P.2d 641, 646 (Wyo. 1981) (emphasis in original). To allow this type of evidence under the appellant's proffered justification would open the door for defendants in sexual assault prosecutions (particularly cases involving children) to explore freely the knowledge and prior sexual practices/experiences of their victims. Such a result would be entirely inconsistent with the intent of our enacted rape shield law.

[¶ 14] We hold that because the evidence of meanness, manipulation, and prior sexual conduct was not admissible, and because the appellant was given the opportunity to challenge the victims credibility, motives, and biases using other admissible evidence, the appellant was not denied his constitutionally protected right to confrontation.

## Whether the prosecutor unfairly vouched for the credibility of the victims during closing argument?

[¶ 15] The appellant asserts that the prosecutor improperly vouched for the credibility of the victim witnesses in statements he made during closing argument. This claim is one of prosecutorial misconduct.

Our standard of review for claims of prosecutorial misconduct in closing argument is well established:

In reviewing a claim of prosecutorial misconduct in closing argument, the court looks at the entire record to determine whether the defendant's case was so prejudiced by the improper comments as to result in the denial of a fair trial. *Capshaw v. State,* 10 P.3d 560, 567 (Wyo. 2000); *Metzger v. State,* 4 P.3d 901, 910 (Wyo.2000). The challenged comments are judged in the context of the prosecutor's entire argument, considering the context of the statements and comparing them with the evidence produced at the trial. *Helm v. State,* 1 P.3d 635, 639 (Wyo.2000).

... When an objection is launched to a statement made in closing argument, we defer to the trial court's ruling in the absence of a clear or patent abuse of discretion. *Gayler v. State,* 957 P.2d 855, 860 (Wyo.1998).

*Harris v. State,* 2008 WY 23, ¶ 14, 177 P.3d 1166, 1170–71 (Wyo.2008) (quoting *Burton v. State,* 2002 WY 71, ¶¶ 11–12, 46 P.3d 309, 313 (Wyo.2002)). "If the trial court abused it's discretion by allowing impermissible argument, we will only reverse if 'a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict.'" *Moe v. State,* 2005 WY 58, ¶ 17, 110 P.3d 1206, 1212 (Wyo.2005) (quoting *Mazurek v. State,* 10 P.3d 531, 542 (Wyo.2000)).

[¶ 16] We have addressed the issue of an expert witness vouching for the credi-

bility of the testimony of an alleged sexual assault victim on a number of prior occasions. *See Lopez v. State,* 2004 WY 103, ¶¶ 9–26, 98 P.3d 143, 146–151 (Wyo.2004); *Seward v. State,* 2003 WY 116, ¶¶ 18–29, 76 P.3d 805, 812–18 (Wyo.2003); *Wilde v. State,* 2003 WY 93, ¶¶ 15–19, 74 P.3d 699, 708–09 (Wyo.2003); *Stephens v. State,* 774 P.2d 60, 68 (Wyo.1989), *overruled in part on other grounds by Large v. State,* 2008 WY 22, 177 P.3d 807, 816 (Wyo.2008). Before examining the appellant's specific claims, we note that this case is unlike the above-cited cases in that the appellant does not argue that the expert improperly vouched for the credibility of the victim witnesses. Instead, he claims that *"the prosecutor used the statements of the expert testimony to vouch for the credibility of the witness and achieved the same result."* (Emphasis in original.) The appellant points to three statements, all made during closing argument, where he contends the prosecutor improperly vouched for the credibility of the victim witnesses. The first two, in which the prosecutor references testimony of the expert witness, are set forth below with emphasis added to the specific portions to which the appellant takes exception:

[Prosecutor]: Just because [the younger sister] did not want to talk about it does not mean that it didn't happen. Just because [the younger sister] didn't disclose the sexual molestation in detail does not mean that it didn't happen.

The expert, the psychologist, Fred Lindberg, explained to you the disclosure process in these kinds of situations where children have been sexual[ly] abused. He told you that there was partial or piece-by-piece disclosure, if you will, in many of these cases, **and that's exactly what happened with [the younger sister].** You saw her, ladies and gentlemen. She was absolutely petrified in the CAP interview.[4] She was absolutely petrified when she took the stand.

He explained to you, piece-by-piece disclosure is when they're testing the waters, you know, and they are so embarrassed

and so humiliated that they're going to tell a person just a little bit at a time until they see—

(Emphasis added.) Defense counsel objected at this point and the following exchange occurred at the bench:

[Defense Counsel]: I hate interrupting the closing argument but, Your Honor, this is exactly what I objected to before Dr. Lindberg testified. I think it amounts to vouching for the credibility of the witness.

The Court: I don't believe so. I think he's talked about the characteristics—behavioral characteristics, and I think that's appropriate under the case law.

So Ill overrule the objection.

Mr. Schafer may continue. As long as he's talking about behavior characteristics, that's fine. But if it gets into truth and veracity, that's another [sic].

The next instance of alleged vouching occurred right after the prosecutor continued his closing argument:

[Prosecutor:] Like I was trying to indicate to you, ladies and gentlemen, the expert, Dr. Lindberg, was trying to explain to you the common misconceptions of the way sexual disclosure occurs with children, children like [the younger sister], in these cases.

It's a very emotional, traumatic thing for them to go to [sic]. And what they do is, they test the waters, and they won't always disclose everything that happened to them each and every time.

You heard Dr. Lindberg's testimony that there are victims who never even report sexual abuse at all. And in his testimony, also, a third of them never even indicate what the sexual abuse is until after five years.

**And isn't this exactly what happened with [the older sister] in this case?** It took her 3 1/2, 4 years to disclose the sexual abuse. . . .

(Emphasis added.)

[¶ 17] The appellant argues that by saying that the behaviors described by Dr. Lind-

---

4. The CAP (Children's Advocacy Project) interview was a videotaped interview conducted as part of the sexual assault investigation and presented to the jury.

berg are "exactly what happened" in this case, the prosecutor gave more credibility to the victims testimony, thereby improperly vouching for their credibility. We disagree with the appellant's conclusion. When addressing vouching issues in the context of prosecutorial misconduct, we have said:

> Counsel are allowed wide latitude during the scope of their closing arguments, and a prosecutor may comment on all of the evidence in the record and suggest reasonable inferences from that evidence. However, the prosecutor may not inflame or mislead the jury or express his personal beliefs or opinions about the evidence. *Davis v. State*, 2005 WY 93, ¶ 25, 117 P.3d 454, 463 (Wyo.2005). Similarly, a prosecutor cannot personally vouch for the credibility of a state's witness, nor can a prosecutor assert his own credibility as a basis for conviction of a defendant.
>
> > [W]hen the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This additional factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion; that members of the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor, an important state official entrusted with enforcing the criminal laws of a sovereign state. While the prosecutor is expected to be an advocate, he may not exploit his position to induce a jury to disregard the evidence or misapply the law.
>
> *Condra v. State*, 2004 WY 131, ¶ 11, 100 P.3d 386, 390 (Wyo.2004).

*Teniente v. State*, 2007 WY 165, ¶ 30, 169 P.3d 512, 524 (Wyo.2007). With regard to the admissibility and appropriate use of expert testimony in sexual assault cases, we have said:

> Expert testimony that discusses the behavior and characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts is admissible. *Scadden v. State*, 732 P.2d 1036 (Wyo.1987). Such testimony is relevant and helpful in explaining to the jury the typical behavior patterns of adolescent victims of sexual assault. *Griego v. State*, 761 P.2d 973 (Wyo.1988). It assists the jury in understanding some of the aspects of the behavior of victims and, so long as there is no comment on the credibility or truthfulness of the victims, it does not invade the province of the jury. *Zabel v. State*, 765 P.2d 357 (Wyo.1988).

*Rivera v. State*, 840 P.2d 933, 939 (Wyo. 1992), *abrogated on other grounds by Springfield v. State*, 860 P.2d 435 (Wyo.1993).

[¶ 18] After reviewing the entire record on appeal, and particularly the trial transcripts, we find that the prosecutor's comments relating the victims' actions to the general behaviors described by Dr. Lindberg were not tantamount to vouching for the victims' credibility. The prosecutor's statements merely informed the jury about the relevance of Dr. Lindberg's testimony and suggested how that testimony might assist the jury in determining the facts at issue. Such use of expert testimony is proper. *See Lessard v. State*, 719 P.2d 227, 233–34 (Wyo.1986) (expert testimony as to why sexual assault victim would ask assailant not to tell about sexual encounter was admissible in that it did not constitute testimony with respect to veracity of victim, but rather assisted jury in understanding evidence). Furthermore, relating the general behaviors described by Dr. Lindberg to the behaviors exhibited by the victims in this case was particularly important to effective prosecution of the case inasmuch as one of the appellant's defense strategies was to argue that the victims' behaviors were inconsistent with the allegations they were making against the appellant. Specifically, the appellant attempted to discredit the victims by raising questions regarding: 1) the victims' delay in reporting, 2) their methods of disclosure, 3) their maintaining a relationship and continued contact with the appellant, 4) their inconsistent or incomplete disclosure, and 5) their lack of overt manifestations of distress. Without expert testimony to educate the jury about common misconceptions concerning the general behaviors of child victims, the jury might have drawn inappropriate conclusions.

[¶ 19] The third and final statement the appellant argues amounted to improper vouching by the prosecutor was also made during his closing statement:

> Now, [the younger sister] went through two traumatic experiences. The first time was when she was molested, February 18th of 2008, and that will be a day that shell never forget.
>
> But the second time is when she went through the judicial process. She had the—she didn't have the power and the time or the ability to stop what that man was doing to her in the bedroom. But she did have the ability, the time, and the power to stop what the defendant says she is doing [now, which is] fabricating this whole thing. But she didn't do that because she has the courage, and she knows what's right. And she came in here with all that difficulty and rose her right hand and told you, ladies and gentlemen, that she would tell the truth. And she's a human being just like everybody in this courtroom, and she has a conscience.

The appellant asserts that this statement is similar to one made in *Lopez v. State*, 2004 WY 103, 98 P.3d 143 (Wyo.2004). *Lopez* is another in the line of vouching cases where we found that an expert improperly vouched for the credibility of the child victim. In that case, the prosecutor made the following statement: "if you believe that 12–year–old child when she was sitting on that witness stand, and you believe what she told you was the truth, that is all the evidence you need." *Id.* at ¶ 24, 98 P.3d at 151. The appellant argues that both the *Lopez* statement and the above-quoted statement made by the prosecutor in this case resulted in improper vouching.

[¶ 20] The appellant's reliance on *Lopez* is misplaced. To begin, we did not find that the statement in *Lopez* was improper, but only quoted it in the course of examining the improper vouching testimony of the expert witness. Furthermore, the substance and context of the two statements is different. A more analogous statement can be found in *Teniente v. State*, 2007 WY 165, 169 P.3d 512 (Wyo.2007), where the prosecutor made the following comment regarding an eye-witness's testimony in a first-degree murder trial:

> [W]e have one eyewitness, one eyewitness that stepped up to the plate February 18th, and said, 'I was there. This is what happened.'. . . .
>
> . . . .
>
> He saw what happened, and he decided to step forward and tell the truth, even though the first time, it's against his very own brother, and now the second time, against his cousin. Courage.

*Id.* at ¶ 32, 169 P.3d at 525. Both the statement in *Teniente* and the statement made here are comments about the courage of the witness to come forward in the face of opposition and testify "truthfully." We sustained the prosecutor's statement in *Teniente* holding:

> While a prosecutor cannot continuously and repeatedly express his opinions or beliefs as to the truth or falsity of testimony or the innocence or guilt of the defendant, he may comment on evidence and present reasonable inferences that logically flow from that evidence including making a reasonable inference that a witness is not truthful, assuming that the evidence supports such an inference.
>
> . . . .
>
> Teniente claims that this is improper vouching for the credibility of [the witness]. We do not interpret the comments in the same fashion. The prosecutor was not vouching for the credibility of [the witness]. Rather, he was arguing reasonable inferences, drawn from evidence introduced at trial, that [the witness]' testimony could be seen as reliable.

*Id.* at ¶¶ 31–33, 169 P.3d at 524–25. In neither statement does the prosecutor express a personal belief or opinion about the credibility of the witness, witness's testimony, or truth or falsity of the evidence. Given the context in which they were made, we find neither statement to be improper. However, we note that the *Teniente* statement that the witness came forward to "tell the truth" draws closer to the line of misconduct than the statement made here. The *Teniente* statement, made in a different context, might reasonably lead a jury to believe the prosecu-

tor has a personal belief or opinion about the credibility of that witness. In contrast, the prosecutor's statement here, that the witness "rose her right hand and swore to tell the truth," carries no express message that the prosecutor believes or has an opinion about the credibility of the witness but merely reiterates what the jury already knows and witnessed.

### CONCLUSION

[¶ 21]   We hold that the appellant's constitutionally protected right to confrontation was not abridged when the district court refused to allow him to question the victims about prior alleged sexual conduct or about specific instances showing the victims' mean or manipulative character traits, which instances did not involve the appellant. Further, we find that the prosecutor did not improperly vouch for the victims' credibility when, during closing argument, he referenced the testimony of an expert witness and related it to the victims' behavior, or when he stated that the younger sister "rose her right hand and told [the jury], that she would tell the truth."

[¶ 22]   Affirmed.