2006 WY 108

**Doyle Eugene GABBERT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–34.**

Supreme Court of Wyoming.

Aug. 31, 2006.

Rehearing Denied Sept. 25, 2006.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehu-

rek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dee Morgan, Senior Assistant Attorney General. Argument by Ms. Morgan.

Before VOIGT, C.J., and GOLDEN, HILL,* KITE, BURKE, JJ.

GOLDEN, Justice.

[¶1] Doyle Gabbert was convicted following a jury trial of one count of aggravated robbery, two counts of aggravated assault, four counts of kidnapping, one count of conspiracy to deliver a controlled substance, one count of delivery of a controlled substance and one count of using a firearm during the commission of felonies (kidnapping). On appeal, Gabbert asks this Court to review whether the district court committed reversible error in instructing the jury on the kidnapping charges and admitting testimony concerning his arrest, whether sufficient evidence was presented to support his convictions on two counts of kidnapping, and whether he was deprived of a fair trial because of prosecutorial misconduct. We reverse the kidnapping convictions because of erroneous jury instructions. Finding no other error, we affirm the convictions on all remaining counts.

## ISSUES

[¶2] Gabbert offers the following issues for our review:

I. Did fundamental error occur in instructing the jury?

II. Was there insufficient evidence to convict [Gabbert] of two counts of kidnapping (as to the two children)?

III. Did prosecutorial misconduct occur during [Gabbert's] trial, warranting reversal?

IV. Did the trial court err in admitting irrelevant testimony regarding the arrest of [Gabbert]?

V. Did cumulative error occur, warranting reversal?

* Chief Justice at time of oral argument.
1. The children were in the bedroom asleep during most of the encounter.

## FACTS

[¶3] On November 9, 2003, Gabbert fronted fifteen grams of methamphetamine to Michael Hershberger (Hershberger) and Serenity Thomas (Thomas), two of the victims in this case. The two had agreed to leave Douglas, Wyoming, to sell the drugs for Gabbert and pay him $1,500.00 from the proceeds. Instead of selling the drugs as agreed, Hershberger and Thomas used some of the methamphetamine and gave some away, returning to Douglas with only a few grams. Anticipating they would incur Gabbert's wrath for using the drugs, they told Gabbert upon their return on November 10 that they were pulled over by police and had thrown the drugs out the car window. Gabbert initially accepted their story, although he expressed concern about the lost proceeds.

[¶4] The next day, November 11, Hershberger sold some of the remaining methamphetamine to a friend he had in common with Gabbert. Later that night, Gabbert went to the apartment shared by Hershberger, Thomas and Thomas' two young daughters,[1] ages 2 and 7, demanding money or the return of the drugs. Gabbert pointed a gun at Hershberger's head, then to Thomas' head, and told them he was going to kill them and Thomas' daughters if he did not get his $1,500.00 or his drugs. Gabbert then took approximately $200.00 from Hershberger's wallet, which was all the money they possessed. Not satisfied with the amount recovered, Gabbert again threatened to kill them and the girls if he did not get the rest of his money.

[¶5] Around 3:00 a.m., Hershberger called his grandmother and asked for money.[2] She declined to give him any money. A few minutes later, Gabbert and Hershberger left the apartment. As they were walking through the apartment complex, Hershberger saw an opportunity to escape and took off running. He eventually hid in a house a short distance from the apartment complex,

2. Hershberger used Gabbert's cellular phone to make the call as there was no phone service in the apartment.

where he remained until police arrived in the morning.

[¶ 6] Gabbert angrily returned to the apartment.[3] Gabbert informed Thomas that Hershberger ran away and that it was now on her shoulders to get him his money. Gabbert demanded his money and threatened to kill her and her daughters if she tried to get away or failed to come up with the money. After a period of time, Gabbert directed Thomas to use a nearby pay phone to call someone who could give her the money to pay him, and forced her to leave the children with him until she returned. He again told her that if she did not come up with the money, he would kill her and the girls.

[¶ 7] Thomas left the apartment and called her mother, who lived in Newcastle, Wyoming, and told her what was happening. They agreed that Thomas would call back in an hour to find out if her mother could get the money. Gabbert later refused to let Thomas leave the apartment to make the follow-up call. Thomas' mother ultimately contacted the police in Newcastle and reported what her daughter had told her.

[¶ 8] When the girls woke up in the morning, Thomas informed Gabbert that she and the girls had to go to court. Gabbert agreed Thomas and her oldest daughter could leave the apartment for that purpose, but they had to return. Everett VanMeter, Thomas' cousin's husband, unexpectedly arrived to give them a ride to court. Thomas and her two daughters eventually left the apartment with VanMeter and were contacted by law enforcement officers at the scene. Police later arrested Gabbert inside the apartment and recovered a loaded 9mm handgun that had been hidden inside a heating vent. The handgun matched the description given by Thomas and Hershberger of the gun Gabbert used to threaten them and Thomas' children.

[¶ 9] The State charged Gabbert with one count of first degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–302(a)(i) (LexisNexis 2005), one count of aggravated rob-

bery in violation of Wyo. Stat. Ann. § 6–2–401(a)(ii) and (c)(ii) (LexisNexis 2005), two counts of aggravated assault in violation of Wyo. Stat. Ann. § 6–2–502(a)(iii) (LexisNexis 2005), four counts of kidnapping in violation of Wyo. Stat. Ann. § 6–2–201(a)(ii) and (d) (LexisNexis 2005), two counts of delivery of a controlled substance (methamphetamine) in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i) (LexisNexis 2005), one count of conspiracy to deliver a controlled substance (methamphetamine) in violation of Wyo. Stat. Ann. § 35–7–1042 (LexisNexis 2005), and one count of using a firearm during the commission of felonies in violation of Wyo. Stat. Ann. § 6–8–101 (LexisNexis 2005). After a four-day trial, a jury acquitted Gabbert on the sexual assault charge and one of the delivery charges but found him guilty on the other charges. The district court sentenced Gabbert to prison terms of fifteen to twenty years on the aggravated robbery, kidnapping and conspiracy convictions and five to ten years on the aggravated assault convictions, to run concurrently, and fifteen to twenty years for the delivery conviction, to run consecutively to the other sentences.[4] This appeal followed.

## DISCUSSION

### *Issue I—Jury Instructions*

[¶ 10] Gabbert first contends the jury instructions pertaining to the kidnapping charges were fatally defective because they did not correctly state the law. Specifically, Gabbert complains that the instructions did not properly set forth the elements of kidnapping because they referenced the crime of "larceny" instead of "felony larceny" and did not define the crime of felony larceny. He claims that the alleged erroneous instructions, when viewed as a whole, misled the jury as to the circumstances under which he could have been convicted on the four counts of kidnapping.

[¶ 11] Gabbert did not object to the challenged instructions at trial and,

---

**3.** Thomas had apparently locked only one of the door's locks after Gabbert and Hershberger left the apartment. Gabbert had a key to that lock, which allowed him to re-enter the apartment.

**4.** The district court did not impose a separate sentence for the use-of-firearm conviction.

therefore, our only avenue of review is under the doctrine of plain error,[5] which demands: (1) the record be clear as to the incident alleged as error; (2) Gabbert demonstrate the existence of a clear and unequivocal rule of law which was violated in clear and obvious, not merely arguable, way; and (3) Gabbert prove the error adversely affected a substantial right resulting in material prejudice to him. *Sanchez v. State*, 2006 WY 12, ¶ 19, 126 P.3d 897, 904 (Wyo.2006); *Reilly v. State*, 2002 WY 156, ¶ 15, 55 P.3d 1259, 1264–65 (Wyo.2002). The plain error criteria apply even when constitutional error is alleged, and unless each criterion is satisfied, a claim for review under the plain-error doctrine will fail. *Miller v. State*, 904 P.2d 344, 348 (Wyo. 1995). The failure to properly instruct on an element of a crime can constitute plain error. *Reilly*, ¶ 16, 55 P.3d at 1265. In *Reilly*, we reiterated:

> Jury instructions are designed to inform the jury about the applicable law so that the jury may apply that law to its own findings with respect to the material facts. Given this purpose, the test whether the jury has been instructed on the necessary elements of the crime charged is whether the instruction leaves no doubt as to under what circumstances the crime can be found to have been committed. A failure to give **any** instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, requiring reversal of the defendant's conviction.

*Reilly*, ¶ 16, 55 P.3d at 1265 (quoting *Miller*, 904 P.2d at 348) (emphasis in original) (quotation marks and internal citations omitted). We analyze jury instructions as a whole and do not single out individual instructions or parts thereof. *Ogden v. State*, 2001 WY 109, ¶ 8, 34 P.3d 271, 274 (Wyo.2001). We afford trial courts great latitude in instructing juries and will not find reversible error as long as the jury instructions correctly state the

law, and the instructions as a whole sufficiently cover the issues which were presented at the trial. *Id.; Harris v. State*, 933 P.2d 1114, 1126 (Wyo.1997).

[¶ 12] In this case, the district court instructed the jury in pertinent part as follows on the elements of kidnapping: [6]

> The elements of the crime of Kidnapping, as charged in Count [ ] of this case are:
>
> 1. On or about the 11th day of November, 2003,
> 2. In Converse County, Wyoming,
> 3. The Defendant, DOYLE GABBERT,
> 4. Unlawfully confined [name of victim],
> 5. With the intent to facilitate the commission of a **crime: larceny.**

(Emphasis added.) Instruction No. 17 defined the crime of larceny as "the stealing, taking or carrying away the property of another with the intent to deprive the owner or possessor of the property."

[¶ 13] The section of the kidnapping statute under which Gabbert was charged, Wyo. Stat. Ann. § 6–2–201(a)(ii) (LexisNexis 2005), provides in relevant part:

> (a) A person is guilty of kidnapping if he unlawfully ... confines another person, with the intent to:
>
> * * * *
>
> (ii) Facilitate the commission of a **felony[.]**

(Emphasis added.)

[¶ 14] It is clear and unequivocal that the kidnapping statute required the jury to determine whether Gabbert confined Hershberger, Thomas and Thomas' daughters with the intent to facilitate a felony. Because the object crime of his felonious intent was larceny, the district court was required to give an instruction setting forth the elements of felony larceny. The larceny instruction given by the district court did not differentiate between the crime of misde-

---

5. The State suggests this Court decline to review the alleged instructional error, claiming this error was "invited" by Gabbert's actions below. We summarily reject this argument. As this Court made clear in *Vigil v. State*, 859 P.2d 659, 664 (Wyo.1993), an instructional error going to an essential element of a crime is necessarily

prejudicial. The doctrine of "invited error" has no application to a claim of such error.

6. The kidnapping instructions given in this case were identical except for the names of the victims.

meanor larceny and the crime of felony larceny.[7] The instructions were deficient because they required only a finding by the jury that Gabbert intended to commit a larceny without a determination as to whether the intended larceny qualified as a felony level offense as required by the kidnapping statute.

[¶ 15] The record clearly reflects what occurred at trial without resort to speculation. The district court failed to properly instruct the jury on an essential element of the kidnapping crime. This constitutes a transgression of the requirement that a trial court instruct the jury on the necessary elements of the crime charged. *Reilly*, ¶ 20, 55 P.3d at 1267; *Vigil v. State*, 859 P.2d 659, 662 (Wyo.1993). We have no trouble concluding the instructional error adversely affected Gabbert's substantial rights. As the accused, Gabbert had the right to be convicted based on a finding of proof beyond a reasonable doubt as to each element of the crime charged. *Reilly*, ¶ 20, 55 P.3d at 1267; *Vigil*, 859 P.2d at 662. The jury did not find the State had proved beyond a reasonable doubt that Gabbert unlawfully confined the victims with the intent to facilitate the commission of a felony because the jury was not instructed that his intended crime had to be a felony level offense. Accordingly, we reverse Gabbert's kidnapping convictions.

[¶ 16] While not raised by Gabbert, our review of the record reveals that his conviction for using a firearm during the commission of felonies relied on the kidnapping crimes as the predicate felonies. Having determined that Gabbert's convictions on the kidnapping charges must be reversed, his conviction on this count likewise must be reversed.

## Issue II—Evidentiary Sufficiency

[¶ 17] Gabbert's sufficiency of the evidence claim only involves the kidnapping convictions pertaining to the Thomas children. Although we have reversed those convictions due to erroneous jury instructions, we must address Gabbert's claim because a finding of insufficient evidence on those con-

victions amounts to a judgment of acquittal and prohibits the State, pursuant to the Double Jeopardy Clauses of the United States and Wyoming Constitutions, from retrying Gabbert on those charges. *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978); *Longstreth v. State*, 890 P.2d 551, 552–54 (Wyo.1995).

[¶ 18] Gabbert's claim concerns Instruction No. 27 which defined for the jury the unlawful confinement element of the kidnapping charge:

A confinement is unlawful if it is accomplished:

(i) By force, threat or deception; or

(ii) Without the consent of a parent, guardian or other person responsible for the general supervision of an individual who is under the age of fourteen or who is adjudicated incompetent.

Citing to the principles espoused in *Bush v. State*, 908 P.2d 963, 966 (Wyo.1995), and its progeny, Gabbert claims that Instruction 27 contains alternative theories for satisfying the unlawful confinement element and, because the record is unclear as to which alternative the jury based its verdict, sufficient evidence must exist on both alternatives to sustain his conviction on each count. According to Gabbert, insufficient evidence exists to prove he confined the girls by force, threats or deception. Gabbert does not challenge the adequacy of the evidence on the alternative theory.

[¶ 19] Gabbert's argument is not well-founded. As noted above, instructions were given setting forth the elements of kidnapping. Instruction No. 27 simply defines the "unlawfully confine[d]" element of the kidnapping crime. In *Miller v. State*, 2006 WY 17, ¶¶ 25–26, 127 P.3d 793, 799–800 (Wyo.2006), and *Doherty v. State*, 2006 WY 39, ¶¶ 15–16, 131 P.3d 963, 968–69 (Wyo. 2006), we held that the rule of *Bush* does not apply to definitional instructions. The holdings in those cases apply equally in the instant case. Instruction No. 27 does not change, or add anything to, the elements of

---

7. At the time of the crimes, larceny was a felony if the value of the property was more than $500.00. Wyo. Stat. Ann. § 6–3–402(a) and (c) (LexisNexis 2003). In 2004, the felony amount was increased to $1,000.00. 2004 Wyo. Sess. Laws ch. 126, § 1.

kidnapping. There is no need under *Bush* and its progeny for sufficient evidence to exist as to both subsections of the challenged definitional instruction.

### Issue III—Prosecutorial Misconduct

[¶ 20] Gabbert insists that reversible error occurred because of prosecutorial misconduct. The majority of Gabbert's complaints involve the prosecutors' alleged improper questioning of three witnesses. He also claims the prosecutors improperly elicited victim impact testimony from Thomas and misstated the evidence during closing argument.

[¶ 21] When reviewing a claim of prosecutorial misconduct, the entire record must be considered. Whether such misconduct is reviewed on the basis of harmless error, W.R.Cr.P. 52(a) and W.R.A.P. 9.04, or on the basis of plain error, W.R.Cr.P. 52(b) and W.R.A.P. 9.05, our primary focus is whether an accused's case has been so seriously prejudiced by the error that a fair trial has been denied. *Butcher v. State*, 2005 WY 146, ¶ 38, 123 P.3d 543, 554 (Wyo.2005); *Lopez v. State*, 2004 WY 103, ¶ 56, 98 P.3d 143, 157 (Wyo.2004). This involves a determination as to whether, "based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused." *Lopez*, ¶ 56, 98 P.3d at 157. Gabbert bears the burden of establishing prejudicial error. *Butcher*, ¶ 39, 123 P.3d at 554.

[¶ 22] We have carefully examined Gabbert's various prosecutorial misconduct claims and conclude that Gabbert has not established reversible error with respect to any of his allegations. In some instances, Gabbert has totally failed to provide this Court with a cogent legal analysis to support his claims. Most glaring is his failure to demonstrate, within the context of the record in this case, how the prosecutors' alleged improprieties adversely affected his trial. Gabbert's reliance on catchy phrases and bald assertions of prejudice is utterly insufficient to satisfy his burden of proving that the outcome of his trial would have been different absent the challenged conduct. *Bhutto v. State*, 2005 WY 78, ¶ 44, 114 P.3d 1252, 1268 (Wyo.2005). Regardless of Gabbert's failure, we are not convinced from our review of the entire record that any of the complained of conduct, even if deemed improper, had a deleterious effect on the jury's verdict.

### Issue IV—Admission of Evidence

[¶ 23] Gabbert claims that reversible error occurred when the district court, over his objection, permitted testimony concerning the events surrounding his arrest. At issue is the testimony of several officers detailing law enforcement's course of action in responding to and investigating the reported crimes. Gabbert claims the officers' testimony was unduly prejudicial and irrelevant to any fact at issue and should have been excluded under W.R.E. 402 and 403.

[¶ 24] Generally, we apply the following standard when reviewing a trial court's evidentiary ruling:

Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the trial court's determination. The burden is on the defendant to establish such an abuse.

*Brown v. State*, 2005 WY 37, ¶ 12, 109 P.3d 52, 56 (Wyo.2005) (internal citations and quotation marks omitted); *see also Farmer v. State*, 2005 WY 162, ¶ 8, 124 P.3d 699, 703 (Wyo.2005); *Holloman v. State*, 2005 WY 25, ¶ 10, 106 P.3d 879, 883 (Wyo.2005).

[¶ 25] Even if we were to assume, for purposes of this appeal, that the district court erred in admitting the testimony at issue, Gabbert must prove that the error was prejudicial and adversely affected a substantial right. *Sanchez v. State,* 2006 WY 12, ¶ 15, 126 P.3d 897, 903 (Wyo.2006); *see also* W.R.A.P. 9.04; W.R.Cr.P. 52(a) (any "error, defect, irregularity or variance which does not affect substantial rights shall be disregarded" by the reviewing court). As previously noted, this requires a showing that the outcome of his trial would have been more favorable had the error not occurred. Once again, Gabbert has failed to demonstrate, within the context of the record in this case, how the outcome of his trial would have been more favorable absent the complained of testimony. This Court requires more substantive analysis than a self-serving statement that the case was "hotly" contested and "any error . . . tipped the scales unfairly against Mr. Gabbert." We decline to make Gabbert's argument for him.

### Issue V—Cumulative Error

[¶ 26] Gabbert presents a perfunctory declaration that, if the errors complained of "do not warrant reversal standing alone, their cumulative effect is such that reversal is necessary in order to secure Mr. Gabbert's right to a fair trial." This single statement is not accompanied by cogent argument that has any direct relation to the facts and circumstances of this case. We therefore will not consider his claim further.

### CONCLUSION

[¶ 27] We reverse the four kidnapping convictions because the district court failed to properly instruct the jury on an element of the crime. Because the kidnapping convictions cannot stand, the use-of-firearm conviction must also be reversed. This case is remanded for proceedings consistent with this opinion on these charges.

[¶ 28] After careful review of the record we find that none of Gabbert's other issues have merit. We can find no indication that the outcome of the trial on the remaining counts against Gabbert would have been more favorable to him absent any of his alleged errors. Consequently, we affirm those convictions.

