2008 WY 1

**RK, Appellant (Defendant),**

v.

**The STATE of Wyoming, ex rel., NATRONA COUNTY CHILD SUPPORT ENFORCEMENT DEPARTMENT, Appellee (Plaintiff).**

No. S–07–0072.

Supreme Court of Wyoming.

Jan. 8, 2008.

Representing Appellant: Larry R. Clapp and Scott J. Olheiser, Clapp & Associates, PC, Casper, Wyoming. Argument by Mr. Olheiser.

Representing Appellee: Patrick J. Crank, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Ellen Rutledge, Assistant Attorney General. Argument by Ms. Rutledge.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant RK challenges the district court's order establishing his paternity of MJ. We affirm.

## ISSUES

[¶ 2] RK raises the following issues:

1. Did the district court commit error in 1993 by failing to enter an order dismissing this case as required by Wyo. Stat. Ann. § 14–2–111(f) (LexisNexis Supp.1992) subsequent to a certified paternity test authenticated and filed in the record demonstrating that the appellant cannot be the biological father of the minor child?

2. Did the district court commit error by allowing this matter to be reopened as an active case subsequent to the expiration of the statute of limitations pursuant to Wyo. Stat. Ann. § 14–2–105(a)(ii) stating that "[a]n action to establish the existence of the father and child relationship ... may be brought: [n]ot later than five (5) years after the birth of the child"?

3. Did the district court abuse its discretion in failing to require the Appellee to show that the genetic test that excluded the Appellant from paternity was rebutted by clear and convincing evidence?

4. Did the district court err in applying parentage statutes currently in effect as opposed to the law in effect at the time the action was commenced?

   a. Did the district court apply the incorrect statutory standard by refusing to allow evidence of another paternity test concerning the paternity of the minor child in this matter?

   b. Did the district court err in failing to weigh evidence in the form of testimony from a geneticist concerning the validity of the paternity tests and the genetic markers which were tested?

### FACTS

[¶ 3] DJ gave birth to MJ in October 1989, in Casper, Wyoming, and later moved to Oregon. After she filed the appropriate paperwork in the State of Oregon, that state requested the State of Wyoming to initiate proceedings to determine paternity and establish child support pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA).[1] The State of Wyoming filed the URESA petition against RK in 1991.[2] The petition alleged that RK was MJ's father and requested an adjudication of paternity and an order of support. RK denied paternity of MJ.

[¶ 4] In early 1993, RK submitted to a genetic test to determine paternity. The laboratory result was filed with the district court on June 7, 1993, and excluded RK as MJ's father. We refer to the 1993 test as "Test 1." Although the test apparently excluded RK as the father, the paternity action remained pending. No significant activity occurred in the case until August 1994 when the court received a new paternity report accompanied by a letter from the laboratory revealing that it had uncovered a "discrepancy in the conclusions" in Test 1. A second letter from the laboratory explained that it had accidentally switched the genetic samples that made up the RK–DJ–MJ test with samples from a different trio. When it discovered the error, the laboratory re-ran the genetic test and concluded that RK could not be excluded as MJ's father. We refer to the 1994 test as "Test 2." Test 2 revealed a 99.99% probability of paternity.

[¶ 5] In response to the laboratory's letter and Test 2 results, the State moved to require additional genetic testing. RK filed a *Motion for Protective Order and Motion for Entry of Judgment Nunc Pro Tunc.*[3] RK's motion asked that the district court "enter a Judgment Nunc Pro Tunc in compliance with the Paternity Evaluation Report filed with the Court on June 7, 1993, and further, that the Court enter a Protective Order barring the State from any further proceeding against the Defendant." The district court denied RK's motion and ordered an additional genetic test to be performed at RK's option and paid for by the State.

[¶ 6] The next case activity occurred in February 1999, when the State filed a *Petition to Establish Child Support and Medical Support Obligation.* RK responded with his claim that he had requested the additional testing, but that it never took place. After a hearing, the district court ordered additional genetic testing pursuant to its 1995 order. RK was tested and the result was filed with the court in December 1999. The report stated that RK could not be excluded as MJ's father and that the probability of paternity was 99.99%. We refer to the 1999 test as "Test 3."

[¶ 7] Following Test 3, there was no substantive case activity in RK's paternity matter until March 2003, when the State requested a hearing. After that hearing and subsequent discovery, RK filed a "rebuttal" to the genetic test results, with a supporting affidavit from "an expert in genetic testing." In December 2003, the parties stipulated that

---

1. URESA has since been replaced by the Uniform Interstate Family Support Act. Wyo. Stat. Ann. §§ 20–4–139 through –197 (LexisNexis 2007).

2. Though the URESA petition was originally filed in 1991, this action is deemed commenced in 1992 because service was made in 1992, more than 60 days after the petition was filed. W.R.C.P. 3(b).

3. An action *"nunc pro tunc"* is one "[h]aving retroactive legal effect through a court's inherent power." *Black's Law Dictionary* 1100 (8th ed.2004).

RK would be allowed to arrange for yet another genetic test using the methodology recommended by his genetic expert, at his own expense. If the 2003 genetic test took place, it is not reflected in the record.

[¶ 8] The district court held a final hearing on October 12, 2006. At that hearing, RK's general strategy was to impeach the genetic test results by introducing the testimony of an expert, Ms. Kim Gorman. The district court relied on Wyo. Stat. Ann. § 14–2–705(b) and ruled that Ms. Gorman could not testify.[4] At the conclusion of the hearing, RK presented an offer of proof by putting Ms. Gorman's proposed testimony on the record.[5] Ms. Gorman testified that Tests 2 and 3 did not adequately rebut the exclusionary results in Test 1. The reason, she explained, was that Tests 2 and 3 did not examine the same genetic marker that had initially excluded RK as MJ's father in Test 1. Ms. Gorman posited that without testing that same genetic marker, one of RK's close relatives could turn out to be MJ's father, rather than RK himself. Ms. Gorman did not discuss the laboratory's disclosure that Test 1 involved the wrong trio of subjects. After the hearing, the district court entered an order establishing RK as MJ's father. RK now appeals the district court's paternity order.

### DISCUSSION

#### Dismissal After Test 1

[¶ 9] RK's primary contention is that the genetic testing statute in effect in 1992 required the district court, *sua sponte*, to dismiss the suit on receipt of the Test 1 results. Further, RK claims that the paternity suit "should have been dismissed against [RK], by operation of mandated law and without any further consideration or hearing." We disagree.

4. Wyo. Stat. Ann. § 14–2–705(b) (LexisNexis 2007) states:
A man identified under subsection (a) of this section [describing genetic testing] as the father of the child may rebut the genetic testing results only by other genetic testing satisfying the requirements of this article which:
(i) Excludes the man as the genetic father of the child; or

[¶ 10] RK's assertion presents an issue of statutory interpretation, which we consider *de novo*. *Worcester v. State*, 2001 WY 82, ¶ 13, 30 P.3d 47, 52 (Wyo.2001). When conducting a *de novo* evaluation, we afford no deference to the district court's interpretation of the statute. *Id.* In conducting our statutory analysis we are guided by the following standard:

> The paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. *State ex rel. State Department of Revenue v. Union Pac. R.R. Co.*, 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182 (Wyo.2003). We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *Id.* A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. *Id.* If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute. *Petroleum Inc. v. State Bd. of Equalization*, 983 P.2d 1237, 1240 (Wyo.1999).

*RME Petroleum Co. v. Wyo. Dep't of Rev.*, 2007 WY 16, ¶ 25, 150 P.3d 673, 683 (Wyo. 2007).

[¶ 11] RK relies on the language of Wyo. Stat. Ann. § 14–2–111(f), in effect in 1992 when the paternity suit was commenced. That statute states:

> If the scientific evidence resulting from the genetic tests conclusively shows that the defendant could not have been the father, the action shall be dismissed, and the defendant shall be refunded all monies or-

(ii) Identifies another man as the possible father of the child.

5. After the district court judge had concluded the hearing and left the courtroom, the court reporter stayed. RK's counsel then conducted what was essentially a direct examination of Ms. Gorman. The State's attorney, while present, did not ask Ms. Gorman any questions.

dered paid by him as child support from the mother of the child.

Wyo. Stat. Ann. § 14–2–111(f) (LexisNexis Supp.1992).

[¶ 12]   RK contends that the phrase, "the action shall be dismissed," in section 14–2–111(f) affirmatively requires the trial court to dismiss the action, even when no litigant moves for the action's dismissal.   Alternatively, he claims that the paternity action was terminated by operation of law when Test 1 was filed with the district court.   RK relies on several cases in which we have accorded mandatory effect to the word "shall" when it appears in a statute.  *E.g., LePage v. State of Wyo., Dep't of Health,* 2001 WY 26, 18 P.3d 1177, 1180 (Wyo.2001); *Mayland v. State,* 568 P.2d 897, 899 (Wyo.1977).   In *LePage,* for example, we stated that "[w]here a statute uses the mandatory language 'shall,' a court must obey the statute as a court has no right to make the law contrary to what is prescribed by the legislature." ¶ 11, 18 P.3d at 1180.

[¶ 13]   The cases relied upon by RK do not, however, establish that the plain language of Wyo. Stat. Ann. § 14–2–111(f) mandates dismissal in the absence of an appropriate motion.   The statute does not establish a timeframe for dismissal, nor does the statute require the district court to dismiss paternity cases on its own initiative. There was nothing to prevent RK from filing a motion to dismiss the paternity action, but RK did not file such a motion until after the court had received information undermining the reliability of the Test 1 results.   Stated differently, at the time RK moved for dismissal, the genetic test had not "conclusively" established that RK was not the father. We also note that there is no requirement in the statute that dismissal be with prejudice. In the absence of a dismissal with prejudice, the State could have re-filed the action in August 1994 when the laboratory's error became known.   In sum, RK asks this Court to read far more into the statute than is justified by its plain text.   The court's failure to dismiss the action, *sua sponte,* did not violate the plain language of the statute.   Accordingly, the paternity action was still pending at the time the laboratory revealed its mistake.

[¶ 14]   RK also contends that the case was "reopened" when the laboratory admitted its error in 1994.   He further claims that the five-year statute of limitations, Wyo. Stat. Ann. § 14–2–105(a)(ii) (LexisNexis Supp. 1994), barred the State from "reopening" the case.   His assertion relies on the proposition that the case against him was dismissed by operation of law when Test 1 was filed.   Because the case was never dismissed, there was no "reopening" of the case, and we need not further consider this claim.

**Failure to Rebut Test 1**

[¶ 15]   RK next asserts that the State did not properly rebut Test 1. He reasons that the district court erred in relying upon the results from Test 2, and Test 3, and the laboratory's communications regarding the inaccuracy of Test 1 because "the district court inappropriately considered useless evidence."   His assertion that the evidence was "useless" is founded in the proposition that Test 2 and Test 3 did not retest the two particular genetic markers from Test 1 that excluded RK.   RK's position, when simply stated, is that the evidence was irrelevant.   Whether evidence is relevant is a decision within the trial court's discretion.   Absent an abuse of that discretion, we will not disturb the district court's determination. *L.U. Sheep Co. v. Board of County Comm'rs,* 790 P.2d 663, 673 (Wyo.1990).

[¶ 16]   In this case, RK has failed to establish an abuse of discretion.   First, RK asks this Court to hold that two genetic tests strongly indicating paternity are irrelevant to RK's paternity.   Second, he asks us to hold that correspondence from the laboratory admitting that Test 1 was a mistake is also irrelevant.   We are unwilling to do so because all this evidence squarely fits the definition of relevant evidence: it has a "tendency to make the existence of [RK's paternity] more probable . . . than it would be without the evidence." W.R.E. 401.

**Incorrect Statute Applied**

[¶ 17]   For his final issue, RK asserts that it was reversible error for the

district court to apply the current statute concerning genetic testing rather than the one in effect in 1992, when this paternity suit was commenced. As a result, he contends, the district court improperly excluded testimony from RK's expert witness, Ms. Gorman. Ms. Gorman would have testified generally that Test 1 excluded RK as the father based on two particular genetic markers that did not match. Because Tests 2 and 3 did not examine those two particular genetic markers, she asserted, Tests 2 and 3 did not effectively refute Test 1's exclusion of RK as MJ's father.

[¶ 18] We evaluate a district court's admission of evidence under the abuse of discretion standard. *E.g., Ferguson v. State,* 2007 WY 157, ¶ 14, 168 P.3d 476, 480 (Wyo. 2007). Even when admission of evidence is at issue, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court." W.R.A.P. 9.04; *Gabbert v. State,* 2006 WY 108, ¶ 25, 141 P.3d 690, 698 (Wyo. 2006). To meet the standard of W.R.A.P. 9.04, RK must show "that the outcome of his trial would have been more favorable had the error not occurred." *Gabbert,* ¶ 25, 141 P.3d at 698.

[¶ 19] The State concedes that the district court should have employed the 1992 genetic testing statute rather than the current law. The difference could be significant in some situations because the 1992 statute allows admission of a broader range of evidence. The 1992 statute states that "[i]f the experts disagree in their findings or conclusions, the question [of paternity] shall be submitted upon all the evidence." Wyo. Stat. Ann. § 14–2–109(e)(ii) (LexisNexis Supp. 1992). The current statute limits options for refuting genetic tests, stating that "[a] man identified ... as the father of the child may rebut the genetic testing results only by other genetic testing." Wyo. Stat. Ann. § 14–2–705 (LexisNexis 2007); *compare* Wyo. Stat. Ann. § 14–2–109(e) (LexisNexis Supp.1992). If the prior statute applies, there was no statutory bar to Ms. Gorman's testimony.

[¶ 20] Nevertheless, the error was harmless because RK's proffered evidence was insufficient as a matter of law. As the labo-

ratory made clear, the error in Test 1 was not simply a problem with the test itself. Rather, the laboratory accidentally switched the samples with another trio of subjects. Therefore, the results reflected in Test 1 were the results of three other people, not of RK, MJ, and DJ. Test 1—and any expert opinion based on it—is irrelevant to whether RK is MJ's genetic father. Ms. Gorman's testimony relied solely on the premise that Test 1 was accurate. Once Test 1 is removed from consideration, the district court was left, as are we, only with Tests 2 and 3. Both of these tests support the district court's conclusion that RK is MJ's genetic father. Accordingly, the district court's error in applying the current paternity statute was harmless.

[¶ 21] Affirmed.