# IN THE SUPREME COURT, STATE OF WYOMING

# 2015 WY 87

APRIL TERM, A.D. 2015

June 17, 2015

MICHAEL SCOTT CARROLL, II,

Appellant
(Defendant),

v.

S-14-0224

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
 *Dion J. Custis, Dion J. Custis, P.C., Cheyenne, Wyoming.*

*Representing Appellee:*
 *Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General. Argument by Mr. Eames.*

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]  Appellant, Michael Carroll, II, challenges his convictions on two counts of first-degree sexual abuse of a minor and one count of second-degree sexual abuse of a minor. He claims that the district court erred in several evidentiary rulings, and asserts that the prosecutor engaged in misconduct.  We find no merit in his claims, and affirm.

## *ISSUES*

[¶2]  Appellant raises four issues for our review, which we reordered to facilitate discussion:

> 1.  Was evidence of Appellant's prior conviction for sexual assault improperly admitted?
>
> 2.  Was evidence of the victim's prior sexual conduct improperly excluded?
>
> 3.  Was evidence of domestic violence improperly admitted?
>
> 4.  Did the prosecutor commit misconduct?

In addition, he contends that the cumulative effect of these errors denied him a fair trial.

## *FACTS*

[¶3]  Appellant married Christine Boxley in 1995.  They had two children.  In the summer of 2004, Appellant's mistress, Miranda Trevino, moved into the Carrolls' home in Pueblo, Colorado.  She brought with her three children from a previous marriage, including her oldest daughter, T.T.  In 2006, the three adults and five children moved to Cheyenne, Wyoming.  Ms. Trevino later gave birth to two more of Appellant's children.

[¶4]  According to T.T.'s testimony, beginning in 2009, when she was fourteen, Appellant started taking her into his bedroom for massages.  At first, he allowed her to keep her undergarments on but, as time went on, he made her take off her clothes and lie naked on the bed.  T.T. testified that Appellant massaged her breasts and vaginal area, "and anywhere else really."

[¶5]  In December of 2009, Appellant pled guilty to third-degree sexual abuse of a minor.  The victim was a fourteen-year-old girl whom Appellant, a nurse, had met at a medical clinic.  As part of his sentence, Appellant was ordered to have no contact with minors.  Appellant moved out of his home and into a separate apartment.  He often spent

1

time at the home of another mistress. Despite the requirements of Appellant's sentence, Ms. Carroll took T.T. to see him several times. Appellant massaged T.T. again during these visits.

[¶6] On one occasion, Appellant asked T.T. if she had lost her virginity. When she said she had not, he said he could help stretch her out so "it won't hurt that much" when she did. He reminded T.T. that he was a nurse and he knew what he was doing. Appellant took a "sex toy" from the closet and tried to "stimulate" T.T. with the toy and with his fingers. T.T. testified that he penetrated her vagina with his fingers and the sex toy.

[¶7] In August of 2010, Ms. Trevino moved to Pasco, Washington, with her five children, including T.T. Shortly after moving, T.T. disclosed to her mother what Appellant had been doing to her. Ms. Trevino reported the allegations of sexual abuse to the sheriff in Washington. The sheriff's department took initial reports and conducted an interview with T.T. It forwarded the information to the sheriff's office in Cheyenne, Wyoming, where the incidents occurred.

[¶8] Appellant was arrested and charged with two counts of first-degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6-2-314(a)(iii) (LexisNexis 2011), and one count of second-degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6-2-315(a)(iv). Following a jury trial, Appellant was convicted on all three charges. He challenges that conviction in this appeal.

## *DISCUSSION*

### *Issue 1: Evidence of other crimes, wrongs, or acts*

[¶9] Four months prior to trial, the prosecution filed a notice with the district court indicating its intent to introduce evidence of Appellant's prior conviction for third-degree sexual abuse of a minor. Following a hearing, the district court issued a decision letter ruling that the evidence was admissible under W.R.E. 404(b). Appellant makes two related claims regarding this evidence.

[¶10] The first is that the district court should have excluded the evidence. Evidentiary rulings are reviewed for abuse of discretion. *Edwards v. State*, 2007 WY 146, ¶ 7, 167 P.3d 636, 637 (Wyo. 2007). "We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion . . . means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id*. (quoting *Gabbert v. State*, 2006 WY 108, ¶ 24, 141 P.3d 690, 697 (Wyo. 2006)).

[¶11] The second claim is that the district court erred in allowing the prosecutor to refer

to the prior conviction when questioning various witnesses. Because Appellant did not object to any of the prosecutor's questions, we review for plain error. *Schreibvogel v. State*, 2010 WY 45, ¶ 44, 228 P.3d 874, 888 (Wyo. 2010).

> To establish plain error, the appellant must show 1) the record clearly reflects the incident urged as error; 2) a violation of a clear and unequivocal rule of law; and 3) that he was materially prejudiced by the denial of a substantial right. *Causey v. State*, 2009 WY 111, ¶ 18, 215 P.3d 287, 293 (Wyo. 2009). Under the plain error standard of review, we reverse a district court's decision only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue. *Id.*, ¶ 19, 215 P.3d at 293.

*Masias v. State*, 2010 WY 81, ¶ 20, 233 P.3d 944, 950 (Wyo. 2010).

[¶12] W.R.E. 404(b), in pertinent part, provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence is inadmissible under W.R.E. 404(b) "if the thrust of the evidence is only to demonstrate that the defendant has a disposition to commit crimes." *Gleason v. State*, 2002 WY 161, ¶ 17, 57 P.3d 332, 340 (Wyo. 2002) (citing *Daniel v. State*, 923 P.2d 728, 733 (Wyo. 1996)). Before admitting such evidence, the trial court must determine that the evidence is relevant and offered for a proper purpose. Even relevant evidence offered for a proper purpose must be excluded if its probative value is substantially outweighed by its potential for unfair prejudice. *Gleason*, ¶ 18, 57 P.3d at 340. Appellant contends, with little analysis and few citations to authority, that the evidence was not admitted for a proper purpose, that it was not relevant, and that it was more prejudicial than probative.

[¶13] The thorough and well-supported analysis contained in the district court's decision letter renders Appellant's contentions untenable. The district court first set forth the test for the admissibility of evidence under W.R.E. 404(b), citing and quoting from *Mersereau v. State*, 2012 WY 125, ¶ 18, 286 P.3d 97, 106-07 (Wyo. 2012), and *Gleason*, ¶¶ 18, 27, 57 P.3d at 340, 342-43. It then applied that test to the evidence of Appellant's prior conviction. It found that the evidence was being offered for a proper purpose:

[T]he State has indicated in its notice that it does not intend to offer the evidence described above to show "propensity" or to argue that the Defendant acted "in conformity" with his prior behavior. Rather, the State asserts that the evidence is offered for the limited purpose of showing the Defendant's "intent, plan, course of conduct and motive." The court notes that these are all proper purposes under Rule 404(b), and that the Wyoming Supreme Court has recognized in numerous cases that evidence of similar sexual misconduct is relevant and admissible in a child sexual assault case to prove "motive and intent," as well as other permissible purposes, in cases (like the present case) where a defendant has denied any wrongdoing. *See Gleason*, 57 P.3d at 340-41 (cataloging cases).

[¶14] The district court also found the evidence was relevant. It noted that the charges against Appellant involved sexual intrusion and sexual contact. Both sexual intrusion and sexual contact, as defined in Wyo. Stat. Ann. §§ 6-2-301(a)(vi) and (a)(vii), require a showing that the Defendant intruded upon or touched a victim's intimate parts for purposes of "sexual arousal, gratification or abuse." It then concluded, "The fact that the Defendant previously pled guilty to improperly touching a 14-year-old victim in the recent past is relevant to show that his motivations, plan, course of conduct and intentions in touching the victim in this case were for 'sexual arousal, gratification or abuse.'" It correctly found that this conclusion was supported by *Mitchell v. State*, 865 P.2d 591 (Wyo. 1993) and *Elliott v. State*, 600 P.2d 1044 (Wyo. 1979).

[¶15] Having concluded that the evidence was offered for a proper purpose and relevant, the district court continued by weighing the probative value of the evidence against its potential for unfair prejudice. The district court's analysis was based on the factors set forth in *Gleason*, ¶ 18, 57 P.3d at 340. With regard to the probative value of the evidence, the district court found that it was clear that Appellant had committed the prior bad act. It analyzed whether the issue to which the evidence was relevant was disputed and whether other evidence was available. It found that the evidence was not cumulative, and that the prior bad act was close in time to the alleged actions involving T.T. Accordingly, it ruled that the evidence had substantial probative value.

[¶16] With regard to the potential for unfair prejudice, the district court found that the prior bad act was less reprehensible than the charged conduct because the prior bad act involved fondling the breasts of a fourteen-year-old girl while the current charges involved sexual intrusion of Appellant's stepdaughter. While recognizing that a jury was likely to feel sympathy for the victim in the prior case, it did not find "any other aggravating factor present that would cause the jury to want to punish the Defendant because of some particular character trait of the prior victim that makes her vulnerable

4

(e.g. a low functioning mental state or some type of physical disability)."  It found that there were similarities between the prior bad act and the charged conduct, but also sufficient differences that the jury would not likely "draw the improper inference that if the defendant did it once, he probably did it again." *Gleason*, ¶ 27, 57 P.3d at 342.  It noted that the charges in the current case were of greater seriousness than the prior bad act, so that evidence of the prior act was not likely to "place the defendant in a different and unfavorable light." *Id*.  Because the prior bad act led to a conviction, the jury would not feel the need to punish Appellant further for that act.

[¶17]  Based on this analysis, the district court concluded the probative value of the evidence of Appellant's prior conviction was not substantially outweighed by the potential for unfair prejudice, and the evidence was therefore admissible.  The district court's thoughtful discussion documents a reasonable decision based on sound judgment.  The district court did not abuse its discretion in ruling that the 404(b) evidence was offered for a proper purpose, relevant, and more probative than unfairly prejudicial.

[¶18]  As the second part of this issue, Appellant complains that the prosecutor asked several witnesses about Appellant's prior trial and conviction.  For example, he asked T.T. if she remembered "a time when there were other – a criminal matter going on?"  He asked her about a statement she had made in that case.  With regard to Appellant talking to her about sexual issues, he asked, "Was that before the trial that you started having these talks?  Was it after the trial?"  He asked several other witnesses similar questions relating to the previous trial.

[¶19]  As previously discussed, the district court did not abuse its discretion in admitting evidence of Appellant's previous crime.  Appellant has presented no authority suggesting why the prosecutor should have been prohibited from referring to this properly-admitted evidence when questioning the various witnesses.  There was no violation of a clear and unequivocal rule of law and, accordingly, no plain error occurred.

***Issue 2: Evidence of the victim's prior sexual conduct***

[¶20]  Prior to trial, in compliance with Wyo. Stat. Ann. § 6-2-312,[1] Appellant filed a

---

[1] This statute is sometimes referred to as Wyoming's rape shield law.  *See, e.g., Budig v. State*, 2010 WY 1, ¶ 10, 222 P.3d 148, 152 (Wyo. 2010).  Wyo. Stat. Ann. § 6-2-312 provides as follows:

> (a) In any prosecution under this article or for any lesser included offense, if evidence of the prior sexual conduct of the victim, reputation evidence or opinion evidence as to the character of the victim is to be offered the following procedure shall be used:

motion to present evidence regarding the sexual conduct of the victim.[2] After holding a hearing, the district court denied the motion in part and granted it in part. Appellant claims that the district court erred in denying part of his motion. The district court's evidentiary ruling under this statute is reviewed for abuse of discretion. *Stogner v. State*, 674 P.2d 1298, 1300 (Wyo. 1984).

[¶21] We have previously discussed the purpose of Wyo. Stat. Ann. § 6-2-312:

> Wyoming, along with most other jurisdictions, enacted a "rape-shield" statute to bring under control a long-standing tradition that rape victims could be discredited as witnesses based on prior sexual conduct. . . . This tradition was based on the faulty notion that women who engaged in nonmarital intercourse were immoral and likely to engage in such

> > (i)     A written motion shall be made by the defendant to the court at least ten (10) days prior to the trial stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the victim and its relevancy to the defense;
> >
> > (ii)     The written motion shall be accompanied by affidavits in which the offer of proof is stated;
> >
> > (iii)     If the court finds the offer of proof sufficient, the court shall order a hearing in chambers, and at the hearing allow the questioning of the victim regarding the offer of proof made by the defendant and other pertinent evidence;
> >
> > (iv)     At the conclusion of the hearing, if the court finds that the probative value of the evidence substantially outweighs the probability that its admission will create prejudice, the evidence shall be admissible pursuant to this section. The court may make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted.
>
> (b) This section does not limit the introduction of evidence as to prior sexual conduct of the victim with the actor.
>
> (c) Any motion or affidavit submitted pursuant to this section is privileged information and shall not be released or made available for public use or scrutiny in any manner, including posttrial proceedings.

---

[2] In accordance with Wyo. Stat. Ann. § 6-2-312(c), the district court sealed Appellant's motion. In this opinion, we will reveal only the minimum information necessary to discuss this issue.

6

conduct on any given occasion, and was deemed prejudicial and humiliating to the victim. Annotation, *Constitutionality of "Rape Shield" Statute Restricting Use of Evidence of Victim's Sexual Experiences*, 1 A.L.R.4th 283, 286 (1980).

*Stogner v. State*, 792 P.2d 1358, 1362 (Wyo. 1990). We have also noted:

[T]he sort of evidence to which the statute relates is "generally ***not*** admissible" in Wyoming. . . . That is, only in the unusual case will the probative value of this kind of evidence substantially outweigh its highly probable prejudicial effect on the victim and the public policy underlying the statute's enactment.

*McGarvey v. State*, 2014 WY 66, ¶ 18, 325 P.3d 450, 456 (Wyo. 2014) (quoting *Stogner*, 792 P.2d at 1362) (emphasis in original).

[¶22] After holding the hearing required by the statute, the district court ruled that Appellant could introduce "evidence that the alleged victim may have touched or handled the sex toys" before the incidents leading to Appellant's charges. The prosecution alleged that Appellant had used a sex toy on T.T. and there was DNA present on one of the toys that may have been T.T.'s. The district court ruled that evidence of T.T.'s prior voluntary handling of the object was relevant as an alternative explanation for the presence of the DNA. That ruling is not at issue in this appeal.

[¶23] The district court also ruled that evidence regarding T.T.'s "highly sexualized conduct" with two boys was inadmissible, observing that "that is the exact type of evidence that the rape shield statute was designed to eliminate in these types of cases." Appellant challenges that ruling on appeal, contending that "the evidence of T.T.'s prior sexual conduct was not intended to discredit, humiliate nor embarrass her." He claims that the purpose of the evidence was to "refute the prosecution's implication that T.T. was sexually naïve" because it "showed that she was aware of sexual matters and had begun experimenting with sexual activity."

[¶24] Appellant's position is in direct conflict with our precedent. In *Budig v. State*, 2010 WY 1, ¶ 11, 222 P.3d 148, 153 (Wyo. 2010), the defendant facing charges of sexual assault and sexual abuse of a minor sought to introduce evidence of the two victims' past sexual conduct. Specifically, the defendant proffered evidence that the older victim "had at least one groping and heavy petting relationship with a boy," and that the younger victim had "repeatedly grabbed a boy in the crotch or kicked him in the crotch." *Id*. The defendant asserted that the evidence was relevant and probative because "without some evidence being put forth of these girls' prior sexual knowledge, any fact finder might believe these little girls couldn't possibly know anything about sex unless [the defendant]

7

had done what he is accused of." *Id*. We rejected the appellant's argument "that the evidence was merely intended to show that the victims had independent 'sexual knowledge,' and not to embarrass or prejudice the victims." *Id*., ¶ 13, 222 P.3d at 154. "To allow this type of evidence under the appellant's proffered justification," we concluded, "would open the door for defendants in sexual assault prosecutions (particularly cases involving children) to explore freely the knowledge and prior sexual practices/experiences of their victims. Such a result would be entirely inconsistent with the intent of our enacted rape shield law." *Id*.

[¶25] As in *Budig*, Appellant sought to introduce evidence of T.T.'s alleged "sexualized behavior" and "sexual sophistication." The district court correctly recognized that this is exactly the sort of evidence covered by the rape shield statute and, based on that statute and cases such as *Budig*, it correctly ruled that the evidence was inadmissible. The district court did not abuse its discretion in this ruling.

### *Issue 3: Evidence of domestic violence*

[¶26] Appellant claims the district court erred when it admitted evidence of domestic violence by Appellant against T.T.'s mother, Ms. Trevino. Again, we review this evidentiary ruling for abuse of discretion. *Edwards*, ¶ 7, 167 P.3d at 637.

[¶27] In direct examination, the prosecution asked Ms. Trevino about a letter she wrote to the court regarding sentencing, after Appellant's prior conviction. The purpose of the letter was "to say that [Appellant] was a good guy." However, she said, the letter was not an accurate reflection of how she really felt at the time. During Ms. Trevino's cross-examination, Appellant's counsel asked her to identify a series of love letters, greeting cards, and photographs indicating that she and Appellant had a happy, loving relationship, in contrast to her previous testimony.

[¶28] Before beginning redirect examination of Ms. Trevino, the prosecutor, outside of the jury's hearing, suggested to the district court that Appellant's counsel had introduced evidence about Ms. Trevino lying. To explain why she had lied, the prosecution wanted to introduce evidence that Ms. Trevino had suffered domestic violence at the hands of Appellant. The district court ruled that Appellant had "opened the door" to such evidence by "attacking the credibility of the witness as to why she would support [Appellant]," and ruled that the evidence could be introduced. The prosecution then elicited testimony from Ms. Trevino that Appellant had become "[v]ery controlling" and that he was "very, very mean" to Ms. Carroll and had hurt her many times. She recounted a time when Appellant, in the presence of the children, picked her up and threw her into a different room because he "didn't like [her] attitude." She testified that his behavior became progressively worse so that, by 2009 or 2010, she "[h]ated him, hated him." She explained that she wrote the supportive letter to the sentencing court because "[i]f I didn't do it, he would hit me."

[¶29] Appellant claims that none of this evidence was "relevant to whether [Appellant] was guilty of the charges against him." He argues that the sole purpose of this evidence was to paint him "as a controlling, abusive thug." Accordingly, he claims that the district court erred in admitting this evidence.

[¶30] W.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 402 provides that relevant evidence is generally admissible and irrelevant evidence is not. As the district court observed, Ms. Trevino's "credibility and character for truthfulness were directly attacked by [Appellant] on cross-examination." The prosecution was then allowed to introduce evidence of domestic violence to help the jury understand why she may have changed her story. As we said in *Barnes v. State*, 858 P.2d 522, 534-35 (Wyo. 1993), "[t]he evidence was relevant as bolstering the credibility of the witness after an attack upon that credibility." We reject Appellant's contention that the evidence was not relevant, and we conclude that the district court did not abuse its discretion in admitting this evidence.

## Issue 4: Prosecutorial misconduct

[¶31] Appellant asserts that the prosecutor committed misconduct by making several improper statements during closing argument. Because Appellant did not object to these statements at trial, we review for plain error. *Schreibvogel*, ¶ 44, 228 P.3d at 888 ("Failure to interject a timely objection to an improper argument is treated as a waiver, unless the misconduct is so flagrant as to constitute plain error.").

[¶32] The prosecutor is afforded "[g]reat latitude" in arguing the case to the jury. *Armstrong v. State*, 826 P.2d 1106, 1115-16 (Wyo. 1992) (quoting *State v. Kennedy*, 249 S.E.2d 188, 191 (W.Va. 1978)). However, there are boundaries the prosecutor may not cross. In *Trujillo v. State*, 2002 WY 51, ¶ 5, 44 P.3d 22, 24-25 (Wyo. 2002), we quoted from and approved of the ABA Standards for Criminal Justice regarding argument to the jury:

> (a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

> (b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence [of] the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

(e) It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds.

To determine whether the prosecutor crossed these boundaries, we consider the "argument in its entirety, not just the sentences and phrases taken out of context." *Armstrong*, 826 P.2d at 1115 (citing *Wheeler v. State*, 691 P.2d 599 (Wyo. 1984)). We reverse if we conclude "there was a substantial risk of a miscarriage of justice." *Armstrong*, 826 P.2d at 1116 (citing *Commonwealth v. Haskins*, 411 Mass. 120, 578 N.E.2d 788 (1991)).

[¶33] Appellant first contends that the prosecutor improperly expressed his own opinions on the evidence. He challenges the prosecutor's statement that "I believe we have proven beyond a reasonable doubt that he had sexual contact with T.T. for purposes of sexual gratification or abuse." Appellant seems to object to this statement for two reasons. First, he suggests that this was an improper expression of the prosecutor's personal opinion. Second, he claims there was no evidence to support the statement.

[¶34] We will consider this statement in context. The prosecutor reminded the jury that the judge had read an instruction listing the elements of the crimes charged, including sexual contact, defined as touching with the intention of sexual arousal, gratification, or abuse. He reviewed evidence indicating that Appellant had massaged T.T., and asked if Appellant was "just being a nice guy [or] was this for the purpose of sexual gratification or abuse?" He then reviewed evidence concerning Appellant's previous conviction on a charge of sexual abuse of a minor, including the victim's testimony about what Appellant said and did. He then made the challenged statement, "But I believe we have proven beyond a reasonable doubt that he had sexual contact with T.T. for purposes of sexual gratification or abuse."

[¶35] If the prosecutor had said only "We have proven beyond a reasonable doubt that he had sexual contact with T.T. for purposes of sexual gratification or abuse," that would have been a reasonable inference about the evidence, and not an improper comment. Appellant's objection is that he began his statement with the phrase "I believe." According to Appellant, that turned the statement into an improper expression of the prosecutor's personal belief. But the ABA standard provides that it "is unprofessional

10

conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence [of] the guilt of the defendant." *Trujillo*, ¶ 5, 44 P.3d at 24. In his statement, the prosecutor was not providing an opinion as to the truth or falsity of any testimony or evidence, and he was not expressing his belief of Appellant's guilt. Thus, the prosecutor's statement did not violate any clear and unequivocal rule of law, and cannot be considered plain error.

[¶36] Appellant's claim that the statement was unsupported by any evidence is incorrect. As discussed above, the prosecution introduced evidence of Appellant's prior conviction of touching a minor for purposes of sexual gratification for the very purpose of proving Appellant's motive and intention in his actions with T.T. This evidence provided support for the prosecutor's assertion that "we have proven beyond a reasonable doubt that he had sexual contact with T.T. for purposes of sexual gratification or abuse." Appellant has not demonstrated that the statement violated any rule of law.

[¶37] In the second statement challenged by Appellant, the prosecutor referred to a photograph of a "sex toy" that had been admitted into evidence. He then asserted that it "was one of the smaller ones in the bunch." Two of the charges against Appellant involved sexual intrusion of T.T. with a "sex toy." A photograph of one such object was admitted into evidence. However, Appellant asserts, T.T. had testified that she did not remember what the device used on her looked like, and there was no evidence that the device in the photograph was the one used on her. Appellant claims that the prosecutor's assertion that the device in the photograph was "one of the smaller ones" improperly conflated it with the device used on T.T.

[¶38] Two witnesses testified that Appellant owned several sexual devices. Both agreed that the one in the photograph was one of the smaller ones. The prosecutor's statement was an accurate portrayal of these two witnesses' testimony. Moreover, the prosecutor did not offer any improper assertion of his belief that the device in the photograph was the one used on T.T. To the contrary, after commenting that this was one of the smaller devices, the prosecutor asked, "And is that the one he used? Again, that's up to you, ladies and gentlemen." He then reminded the jury of expert testimony that there was DNA present on one of the toys that may have been T.T.'s. There was nothing misleading or improper about the prosecutor's statements regarding this device.

[¶39] The third prosecutor's statement challenged by Appellant involved the question of whether Ms. Carroll knew that "something weird was going on" between Appellant and T.T. The prosecutor said, "I don't know. I don't know if we'll ever know." In addition, during rebuttal argument, the prosecutor said with regard to how many times Appellant had massaged T.T., "What are we talking about here? 8 to 12? 15? I don't know. But it happened a lot." Appellant asserts that it is improper for the prosecutor to argue "for a conviction on any basis other than evidence presented."

11

[¶40] However, we find that there was evidentiary support for the prosecutor's statements. Ms. Carroll testified to instances in which Appellant may have had the opportunity to massage T.T. She did not say whether she knew he had done so. The prosecutor's statement that he did not know if Ms. Carroll was aware of the massages accurately reflected her testimony. T.T. testified that Appellant had massaged her on several occasions, but did not specify how many times. The prosecutor's statement that he did not know how many times it had happened, but it happened a lot, correctly represented T.T.'s testimony. Neither statement constituted improper argument or prosecutorial misconduct.

[¶41] Finally, Appellant asserts that the prosecutor improperly commented on the defense counsel's trial strategy. In rebuttal, the prosecutor asked,

> So how much of this closing [argument] by counsel for the Defense was about T.T.? Not a lot. Because their case, their case, ladies and gentlemen, is about distraction and diversion. They want to distract you from the testimony of T.T. And they want to divert you from those things.

A few moments later, the prosecutor asserted that the defense had

> splattered [a] lot of stuff on the floor of this courtroom and [is] hoping you don't sniff through it. But you will. Because this case isn't about those things. . . . This case is about T.T. and what he did to her, what she told you happened to her at his hands when she was just 14 and 15 years old.

[¶42] Appellant contends that this was not discussing the evidence but, rather, disparaging the motives of defense counsel. He compares the prosecutor's remarks with those in *Jones v. State*, 580 P.2d 1150, 1153 (Wyo. 1978), in which the prosecutor said:

> [Jurors] do what they know to be right, and they are not distracted or confused or misled, generally, by devious people. Maneuvering and manipulations are always attempted, and it's proper. I don't mean to say that when an attorney comes in to defend someone he tries, and it's his oath of office and ethical responsibility to do the best thing he can for his client; to raise these little doubts, to distract from the case at hand, to get you all looking at something else so you don't look too closely.

We found this comment to be "clearly improper," but did not explain why. *Id*. In other cases, however, we have said that a prosecutor "may not launch personal attacks against

12

defense counsel to inflame the passions and prejudices of the jury," *Burton v. State*, 2002 WY 71, ¶ 31, 46 P.3d 309, 317 (Wyo. 2002), and that a "personal attack by the prosecutor on defense counsel is improper, and the duty to abstain from such attacks is obviously reciprocal." *English v. State*, 982 P.2d 139, 148 (Wyo. 1999); *United States v. Young*, 470 U.S. 1, 10, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985) (quoting ABA Standards for Criminal Justice 4-7.8 at 4.99).

[¶43] The prosecutor in *Jones* referred to defense counsel as devious, maneuvering, and manipulative. *Jones*, 580 P.2d at 1153. The prosecutor in *English* "strongly implied that defense counsel wanted . . . to intimidate the victim," and we noted that witness intimidation is a felony offense in Wyoming. *English*, 982 P.2d at 148. In both cases, we found the comments were improper personal attacks on defense counsel.

[¶44] The prosecutor's remarks in Appellant's case were not personal attacks on defense counsel. The comments related to the prosecution's view of the defense case, but were not personal insults aimed at defense counsel. These remarks were not "so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue." *Masias*, ¶ 20, 233 P.3d at 950. Applying our plain error standard of review, we conclude that Appellant has not demonstrated that any of the prosecutor's statements violated a clear and unequivocal rule of law.

### Issue 5: Cumulative error

[¶45] Finally, Appellant claims that, even if the complained-of errors do not individually require reversal, the combination of errors denied him a fair trial. In a cumulative error analysis, we consider only "matters that we have determined to be errors." *Guy v. State*, 2008 WY 56, ¶ 45, 184 P.3d 687, 701 (Wyo. 2008). Because we have found no error in any of Appellant's claims, there is no cumulative error to be considered.

[¶46] Affirmed.